UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANTONIO MARQUES SMITH,

                Plaintiff,

v.                                                   Case No. 17-cv-667-pp

SCOTT ECKSTEIN, STEVE SCHUELER,
JOHN KIND, CAPTAIN BAUMANN,
CAPTAIN STEVEN, SGT. SIAGON,
JOHN DOE, and MAILROOM OFFICERS,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 6), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, AND DENYING PLAINTIFF'S ORDER TO SHOW CAUSE AND TEMPORARY EMERGENCY RESTRAINING ORDER (DKT. NO. 9)**

---

      The plaintiff, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. §1983, dkt. no. 1, along with a motion for leave to proceed without prepayment of the filing fee, dkt. no. 6. He also filed a motion asking the court to order the defendants to show cause why the court should not issue a temporary restraining order. Dkt. No. 9. This order resolves the motions and screens the complaint.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with

1

his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

On May 15, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $17.17. Dkt. No. 5. The plaintiff paid that fee on June 5, 2017. Accordingly, the court will grant the plaintiff's motion. The court will require the plaintiff to pay the remainder of the filing fee over time as set forth at the end of this decision.

## II.    Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.(citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United

States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    A.    The Plaintiff's Allegations

The plaintiff is incarcerated at the Green Bay Correctional Institution (GBCI). Dkt. No. 1 at 1. On November 15, 2016, the plaintiff had a court hearing in Milwaukee County Circuit Court, relating to criminal charges he was facing. Id. at 3. At the hearing, the prosecutor informed the judge that the prosecutor had received an email from GBCI concerning mail that the plaintiff had written to one of his attorneys in his criminal case. Id. The prosecutor told the court that he didn't open the plaintiff's letter, because it was privileged correspondence between the plaintiff and his attorney. Id. at 4. The prosecutor stated that he did not know why GBCI staff had opened the envelope, read the letter and forwarded it to the prosecutor, but he told the judge that he thought it appropriate to tell the court about it. Id. The plaintiff says that the judge "was clear in his ruling and order that the actions of GBCI mailroom staff and administration had violated [the plaintiff's] First Amendment attorney/client privileged communication right." Id. The judge commended the prosecutor for not reading the letter, and he directed the prosecutor to delete the email. Id.

3

The judge added that he was "very disturbed" by the actions of the GBCI staff. Id.

After the court hearing, the plaintiff wrote to defendants Warden Eckstein, Deputy Warden Schueler and Security Director Kind. Id. He asked them for the name of the person who opened his legal mail, as well as the identity of the person who'd emailed it to the prosecutor and the person who'd authorized all of this, but they refused to tell him. Id. at 5. He also asked whether any other privileged communications had been opened or read; the defendants "refused to answer" his questions. Id.

On November 29, 2016, the plaintiff filed an inmate complaint about the incident. Id. at 5. Defendant Kind responded that the issue had been addressed with the staff involved, and the complaint was dismissed (because it allegedly had been addressed). Id. Warden Eckstein approved the dismissal of the complaint. Id. The plaintiff filed an appeal to the corrections complaint examiner, who recommended dismissal of the appeal. Id. at 5-6.

The plaintiff states that defendant Sgt. Siagon, who oversees the mailroom department, can't authorize a mailroom officer to open an inmate's mail to his attorney. Id. at 6. The plaintiff thinks that defendants Captain Baumann, Security Director Kind and Deputy Warden Schueler each have the authority to direct staff to open outgoing mail from an inmate to his lawyer. Id. He also believes that Captain Steven, who is the supervising captain of the mailroom and an investigator supervisor, likely played a significant role in

4

opening the letter and forwarding it to the prosecutor. Id. at 7. He says Steven had authorized the opening of privileged correspondence in the past. Id.

The plaintiff claims that the defendants conspired to violate his First Amendment rights and "withheld the name of the individual who actually opened and read his correspondence before seeking permission from one of the [ ] defendants to email this information to the prosecutor." Id. at 6. The plaintiff also claims that the defendants violated his Fourteenth Amendment right to procedural due process. Id. at 8. For relief, he seeks monetary damages. Id. at 9.

B.  Analysis

The plaintiff's allegations implicate his rights under three constitutional provisions. "Inmates have a First Amendment right both to send and receive mail . . . ." Kaufman v. McCaughtrey, 419 F.3d 678, 685 (7th Cir. 2005) (citing Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999)). "An inmate's legal mail . . . is entitled to greater protections because of the potential for interference with his right of access to the courts." Id. "[W]hen a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." Id. (citations omitted). So—the plaintiff's allegations implicate his rights under the First Amendment.

The plaintiff's allegations could be read to imply a possible access-to-courts claim under the Fourteenth Amendment. See Guajardo-Palma v. Martinson, 622 F.3d 801, 802 (7th Cir. 2010) ("[S]ince the purpose of

5

confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts[.]"). In order to state an access-to-the-courts claim, however, the plaintiff must identify an underlying case that the prison officials' actions impeded. See id. at 805; see also Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis v. Casey, 518 U.S. 343, 351-53 (1996). The plaintiff has not alleged that the defendants' actions hindered his criminal case, so the court finds that he has not alleged sufficient facts to allow him to proceed on an access-to-courts claim under the Fourteenth Amendment.

Finally, "[a] practice of prison officials reading mail between a prisoner and his lawyer in a criminal case would raise serious issues under the Sixth Amendment . . . which guarantees a right to counsel in criminal cases." Guajardo-Palma, 622 F.3d at 803 (citing Altizer v. Deeds, 191 F.3d 540, 549 n.14 (4th Cir. 1999) and other cases). The plaintiff's allegations implicate his rights under the Sixth Amendment. See Guajardo-Palma, 622 F.3d at 803. See also Nordstrom v. Ryan, 762 F.3d 903 (9th Cir. 2014).

The court finds that the plaintiff may proceed on claims that his rights under the First and Sixth Amendments to the United States Constitution were violated.

That leaves the issue of which particular defendants the plaintiff's allegations implicate. In his complaint, the plaintiff alleged that all of the defendants conspired to violate his First Amendment rights, by withholding the

name of the person who actually opened and read his mail. Dkt. No. 1 at 6. The court will not allow the plaintiff to proceed on a conspiracy theory. All of the defendants are employees of the same state agency—the Wisconsin Department of Corrections—which means that the intracorporate-conspiracy doctrine applies. See Beese v. Todd, 35 Fed. Appx. 241, 243 (7th Cir. 2002). Under that doctrine, a "conspiracy cannot exist solely between members of the same entity." Payton v. Rush-Presbyterian, 184 F.3d 623, 632 (7th Cir. 1999).

The plaintiff doesn't know who actually opened the letter, and then emailed it to the prosecutor. He thinks that one or more of the supervisory defendants had the authority to authorize a mailroom employee to do it. The court will not dismiss any defendants at this stage. The court advises the plaintiff, however, that only those defendants who had personal involvement in the alleged incident may be held liable for the plaintiff's claims. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). With regard to supervisors, the personal responsibility requirement is satisfied if the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent. Id. In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)).

The plaintiff will need to use discovery to identify the Doe defendants. Once the defendants have answered the complaint, the court will enter a scheduling order setting deadlines for the plaintiff to collect information to enable him to identify the Doe defendants, as well as for the completion of discovery and filing dispositive motions.

### III. Order To Show Cause and Temporary Emergency Restraining Order (Dkt. No. 9)

In this motion, the plaintiff alleges that around February 5, 2018, members of the GBCI staff began to open and review legal materials that the state had provided to him, in electronic form, for the three criminal cases he faces in Milwaukee County. Dkt. No. 9 at 2. The plaintiff was convicted in July of 2017, but says that he currently is seeking post-conviction relief. Id. He states that the Department of Corrections' administrative code requires staff to open legal material in the presence of the inmate. Id. at 3. He concedes that staff reviewed the sixty-six DVDs and CDs in his presence when they arrived at the institution. Id. The plaintiff alleges that on February 9, 2018, he learned that two staff members had opened and reviewed all of the digital materials (which have been at the institution for some two years), and that they confiscated twenty-three of them. Id.

While the plaintiff provides a great deal of detail, the upshot is that Security Director Kind informed the plaintiff that the materials were "contraband," and that they would be destroyed if the plaintiff did not provide Kind with an address where he could send them. Id. at 4. The plaintiff responded by reminding Kind that the inmate complaint system guaranteed

8

him due process, as did the courts, and refused to provide an address until he'd exercised those rights. Id. at 4-5. The plaintiff asserts that he is not required to inform institution staff of how a particular piece of discovery may or may not be relevant to his "ongoing criminal case." Id. at 5. The plaintiff says that the discovery is necessary for him to pursue his post-conviction rights. Id. at 6. He alleges that he is suffering "irreparable harm" by being denied access to courts and the ability to appeal his criminal convictions. Id.

The materials the plaintiff attached to this motion provide information the plaintiff did not mention. For example, he provided a February 16, 2018 memo from Security Director Kind, in which Kind indicated that he couldn't find any open cases or appeals to which the CDs might relate. Dkt. No. 19-1 at 21. On March 6, 2018, Kind wrote to the plaintiff, telling the plaintiff that the DVDs/CDs contained contraband—pornography or music not relevant to his case—which would need to be removed if he wanted to keep the DVDs/CDs. Dkt. No. 9-1 at 12. The institution's inventory of the DVDs lists some of them as "Legal DVD," but indicates that others contain personal photos, pornography, personal videos and music. Id. at 14-15. It appears that the plaintiff has filed a grievance through the Inmate Complaint Resolution System about this issue. Id. at 19.

The Seventh Circuit has held that injunctive relief such as a temporary restraining order or a preliminary injunction "is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc., 549

F.3d 1079, 1085 (7th Cir. 2008) (quoting <u>Roland Mach. Co. v. Dresser Indus., Inc.</u>, 749 F.2d 380, 389 (7th Cir. 1984)). For a party to obtain this rare form of relief, the party first must show that "absent a preliminary injunction, [the party] will suffer irreparable harm in the interim period prior to final resolution" of the party's claims. <u>Id.</u> at 1086 (citing <u>Ty, Inc. v. Jones Group, Inc.</u>, 237 F.3d 891, 895 (7th Cir. 2001)). Second, the party must show that "traditional legal remedies"—money damages—"would be inadequate." <u>Id.</u> Finally, the party must show that his claim "has some likelihood of succeeding on the merits." <u>Id.</u> If the moving party fails to meet any of these requirements, the court must deny the request for injunctive relief. <u>Id.</u> (citing <u>Abbott labs. V. Mead Johnson & Co.</u>, 971 F.2d 6, 11 (7th Cir. 1992)).

The plaintiff has not met the first or second condition for injunctive relief. First, he has not demonstrated that he is suffering irreparable harm. The documents the plaintiff provided indicate that institution staff was unable to find any open state cases for the plaintiff. The court checked the Wisconsin Circuit Court Access System. It does appear that the Court of Appeals has extended the deadline for the plaintiff to file a post-conviction motion in Case No. 2015CF003367, but the plaintiff has a lawyer representing him in that case. Nothing has happened in Case No. 2015CF004868 since August of last year. And nothing has happened in 2016CF001004 since September of last year. So while there is evidence that the plaintiff is considering seeking post-conviction relief, it is not clear why he needs the DVDs and CDs in order to

10

pursue that relief. His lawyer is working on that for him, and presumably has all the information that the plaintiff had when the criminal case was pending.

Nor has the plaintiff addressed the question of why he could not comply with the process Director Kind laid out for him. Director Kind indicated that the plaintiff could give him an address to which to send the DVDs, and indicated that if the plaintiff's lawyer removed the contraband from the DVDs, the lawyer could return them to the institution. The plaintiff insists that he ought not have to do this, but it is not clear why.

The plaintiff has not demonstrated that traditional remedies would not protect his rights. He already has exercised one "traditional" remedy—he has filed an inmate grievance. He has another remedy—he can follow the procedure Director Kind laid out for him. Finally, he could ask his lawyer for copies of the DVDs, if what he wants is the discovery materials.

Because the plaintiff has not met the threshold requirements for issuance of a preliminary injunction, the court will deny his motion.

As a final note, the court is aware that the plaintiff has enquired about why the court took so long to screen his complaint. The court has no excuse—only an explanation. The court's docket is heavy, and the district is short one judge, which has caused this particular judge to fall behind on her case load. The court hopes this order will help move the plaintiff's case forward.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 6.

11

The court **DENIES** the plaintiff's motion for temporary restraining order. Dkt. No. 9.

The court **ORDERS** that under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on the state defendants, and the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the prisoner shall collect from his institution trust account the $332.83 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The agency shall clearly identify the payments shall be clearly identified by the case name and number. If the plaintiff is transferred to another institution—county, state or federal—the transferring institution shall forward a copy of this order, along with plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the the warden of Green Bay Correctional Institution.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, the court will require him to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202.

The court advises the plaintiff that failure to file documents by the deadlines the court sets may result in the court dismissing his case for failure to prosecute.

The parties shall notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 13th day of June, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**