UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO MARQUES SMITH,

                Plaintiff,

    v.                                   Case No. 17-cv-667-pp

WISCONSIN DEPARTMENT OF CORRECTIONS,
SCOTT ECKSTEIN, STEVE SCHUELER, JOHN KIND,
CHRISTOPHER STEVENS, RYAN BAUMMANN,
WILLIAN SWIEKATOWSKI, JAY VAN LANEN,
KATRINA PAUL, ANDREW T. WICKMAN,
"OFFICER" LINSSEN, CHRIS L. HEIL,
DANIEL P. CUSHING, STACEY TILOT,
"SGT." CYGAN, BRIAN FOSTER, ANTHONY MELI,
SARAH COOPER, CYNTHIA L. RADTKE, CATHY JESS,
WILLIAM POLLARD, "CAPTAIN" TIMM, DYLON RADTKE,
"DAI ASSISTAN SECURITY CHIEF, CATHY FRANCOIS,
MILWAUKEE COUNTY OFFICIALS,
KARL P. HAYES—MILWAUKEE COUNTY ADA,
and DAVID DALLAND—MILWAUKEE COUNTY DA INVESTIGATOR,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO AMEND CIVIL RIGHTS COMPLAINT (DKT. NO. 22) AND SCREENING THIRD AMENDED COMPLAINT

On May 11, 2017, the plaintiff filed a complaint under 42 U.S.C. §1983, alleging that seven defendants violated his civil rights when he was in custody of the Wisconsin Department of Corrections. Dkt. No. 1. The court screened the complaint and allowed him to proceed with claims under the First and Sixth Amendments related to an incident that happened in November 2016, when the prosecutor told the judge during a hearing in the defendant's criminal case that the prosecutor had received an email from Green Bay Correctional

1

Institution about a letter the plaintiff had written to one of his attorneys. Dkt. No. 11 at 3-5. Because the plaintiff did not know who opened his mail or emailed it to the prosecutor, the court gave the plaintiff the opportunity to amend the complaint by November 16, 2018. Dkt. No. 15. The plaintiff requested an extension of time to amend the complaint; the court granted an extension until December 21, 2018. Dkt Nos. 16, 17.

The plaintiff filed an amended complaint on December 7, 2018. Dkt. No. 18. The amended complaint was eighteen pages long and named twenty-one defendants. Id. At that point, the defendants asked the court to stay the dispositive motions deadline, dkt. no. 19, and the court granted that request, dkt. no. 20. But two weeks after he filed the amended complaint, the plaintiff filed a proposed second amended complaint. Dkt. No. 21. He did not ask the court's permission to file this second amended complaint. The second amended complaint, also eighteen pages long, named twenty-two defendants; the plaintiff also attached several inmate complaints, including four that were filed *after* he filed this federal lawsuit. Id.

This court did not promptly review the second amended complaint. Over a year later, the plaintiff filed the current motion for leave to file a third amended complaint. Dkt. No. 22. He says that he has been subjected to retaliation by several of the defendants for filing this case. Id. at 3. He asks the court to dismiss the previous complaints and to allow him to proceed on the third amended complaint. Id. at 3-4. The defendants responded that they don't have an objection to the court allowing the plaintiff to amend his complaint for

a third time, but they do object to the court allowing the plaintiff to add to this lawsuit claims that defendants retaliated against him for filing it; they argue that the plaintiff needs to file any retaliation claims in a separate, new lawsuit. Dkt. No. 23.

The court will grant the plaintiff's motion for leave to file a third amended complaint. Dkt. No. 22. The court need not dismiss the prior complaints; an amended complaint "supersedes," or takes the place of any prior complaints. Flannery v. Recording Indus. Ass'n of America, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void.").

## A.  Federal Screening Standard

As the court explained in its original screening order, the court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim, a complaint must contain enough facts, accepted as true, that make the complaint "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556). The court gives a *pro se* plaintiff's allegations, "however inartfully

3

pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**B.    The Plaintiff's Allegations**

In the third amended complaint, the plaintiff has named the Wisconsin Department of Corrections, Scott Eckstein (who was the warden of Green Bay Correctional Institution at the time of the events in the complaint), Steve Schueler (who was the deputy warden), John Kind (who was the security director), Christopher Stevens (who, according to the plaintiff, was a security supervisor and a mailroom supervisor), Ryan Baumann (who was a Captain, and the administrative captain at the time of the events in the complaint and could act as the security director's designee, dkt. no. 14 at ¶5), William Swiekatowski (a security supervisor), Jay Van Lanen (a security supervisor), Katrina Paul (whom the plaintiff describes as "a II Officer"), Andrew Wickman (a security supervisor), "Officer" Linssen (whom the plaintiff describes as "an officer"), Chris Heil (a social worker), Daniel P. Cushing (a security supervisor), Stacey Tilot (whom the plaintiff asserts was "some form of Secretary"), "Sgt." Cygan (a mailroom sergeant), Brian Foster (the warden at Waupun Correctional Institution at the relevant time), Sarah E. Cooper (deputy warden at Waupun), Anthony Meli (security director at Waupun), Cynthia Radtke (the administrative captain at Waupun), Cathy Jess (the secretary of the Department of Corrections at the time), William Pollard (a warden at both Dodge Correctional Institution and Green Bay), "Captain" Timm (the security supervisor at Dodge Correctional Institution), Dylon Radtke (the security director at Dodge), "DAI

Assistant Security Chief" (apparently whoever was the security chief at the Division of Adult Institutions), Karl P. Hayes (an assistant district attorney in Milwaukee County), David Dalland (an investigator with the Milwaukee County DA's office) and Cathy Francois (a supervisor at Green Bay). Id. at 2-6.

The plaintiff alleges that on November 9, 2015, Milwaukee County Circuit Court Judge J.D. Watts ordered that his telephone, visitation and mail privileges be restricted, in response to a motion from defendant Assistant District Attorney Karl Hayes. Dkt. No. 22-1 at ¶28. There was an exception to the order—the order did not apply to communications to and from the defendant's lawyer. Id.

In February 2016, the plaintiff was transferred from the Milwaukee County Jail to Dodge. Id. at ¶29. The plaintiff alleges that a few weeks later, he received a memo from defendant Timm—the security supervisor at Dodge— stating that according to the order issued by Judge Watts, all the plaintiff's visiting, phone and mail privileges were being rescinded, except for communications to the plaintiff's attorney. Id. at ¶30. The plaintiff alleges that on or about March 27, 2016 (about two weeks after the plaintiff got the memo from Timm), Timm, Radtke[1] and Pollard sent to ADA Hayes and investigator Dalland constitutionally protected attorney/client mail between the plaintiff and his lawyer. Id. at ¶31.

_____

[1] The court assumes that the plaintiff means *Dylon* Radtke, who was the security director at Dodge, and not *Cynthia* Radtke, who was an administrative captain at Waupun, where the plaintiff later would be transferred

In April 2016, the plaintiff was transferred from Dodge to Waupun. Id. at ¶41. He says that on September 16, 2016, Radtke (the court assumes that this was Waupun administrator *Cynthia* Radtke) send him a memo, saying that under an order from Milwaukee County Circuit Court Judge Joseph Donald, the "no contact" order had been modified, and he could receive mail while at Waupun. Id. at ¶42. The plaintiff says that Radtke told him the court had ordered that the Waupun staff would copy all his mail and provide the mail to the Milwaukee County DA on request, so the plaintiff was being put on an "open mail monitor;" all incoming mail would be copied "[w]ith the exception of communication with your attorney . . . ." Id. The plaintiff alleges that from April 2016 through September 2016, all his communications with his lawyer, as well as notes he kept in his cell, were photocopied and sent to ADA Hayes and investigator Dalland. Id. at ¶44. The plaintiff asserts that he wrote to Warden Foster, deputy warden Cooper, security director Meli and Radtke, telling them that the Milwaukee County Circuit Court orders did not apply to his communications with his lawyers, but he says these notifications did not stop the defendants from violating his privileged communications. Id. at ¶45.

The plaintiff says that on September 29, 2016, security director Meli sent a group email to Green Bay defendants Kind, Schueler, Eckstein and Francois, copied to Waupun defendants Foster, Cooper and Radtke. Id. at ¶¶40, 46. The email informed Green Bay staff that the defendant was going to be transferred to Green Bay on September 30, 2016; the email advised Green Bay staff that the plaintiff was under a no-contact order but that it did not extend to

communications with the plaintiff's attorney. Id. Meli told Green Bay staff that he'd send the no-contact order via a separate email. Id. at ¶46.

The plaintiff was transferred from Dodge to Green Bay on September 30, 2016, and when he arrived, he received a memo from Green Bay supervisor Francois. Id. at ¶47. The memo informed the plaintiff that the same restrictions that he'd been under at Dodge—the modified restrictions ordered by Judge Donald—would be in place at Green Bay, and that his mail would be copied and provided the DA on request "[w]ith the exception of communication with your attorney . . . ." Id. The plaintiff says that this memo also was sent to Green Bay mail room supervisor Stevens via email, and that when Francois asked Stevens if it was "to his satisfaction," Stevens replied, "Yes." Id. at ¶48. The same day—September 30, 2016—there were several emails sent by Francois, Eckstein, Stevens and security supervisor Swiekatowski to arrange how the plaintiff's mail would be handled; Francois designated social worker Heil as the person who would handle the plaintiff's mail before forwarding it to mail room supervisor Stevens. Id. at ¶¶49-52.

On October 5, 2016, Radtke shared with Stevens the content of the no-contact order, including the fact that it did not apply to his mail with his lawyers. Id. at ¶55. The plaintiff says, however, that just two days later, Stevens emailed some of the plaintiff's mail to ADA Hayes *without* Hayes having asked, even though the orders specified that the prison would provide the plaintiff's mail to the ADAs "upon request." Id. at ¶56. The plaintiff says that what Stevens sent on October 7, 2016 was a letter the plaintiff had written to

the secretary of the Department of Corrections, Jon Litscher. Id. at ¶70. Hayes replied with an email thanking Stevens. Id. at ¶57. The plaintiff contends that on October 17, 2016, Stevens send to Hayes and Dalland a confidential letter he wrote to the administrator of the Division of Adult Corrections. Id. at ¶72. The plaintiff alleges that when Stevens forwarded these two letters to the prosecutors, he violated Wis. Stat. ¶309.04(3)(a). Id. at ¶¶70, 72.

On October 25, 2016, Stevens emailed Hayes and Dalland a five-page letter from the plaintiff to his trial lawyer detailing the plaintiff's view of the case and discussion of his defense. Id. at ¶58. The plaintiff says that social worker Heil intercepted the letter, then forwarded it to Stevens, even though the first page of the letter was clearly addressed to the plaintiffs' lawyer. Id. Again, the DA's office did not ask for this correspondence. Id.

> ADA Hayes responded the same day, stating
>
> Capt. Stevens: The latest letter you sent me appears to be a letter written by prisoner Antonio Smith to his attorney, Tom Erickson. This is a privileged communication. Further, letters written by Smith to Attorney Erickson are not subject to the Court's various orders regarding Smith's mail restrictions. Nor are letters written by Attorney Erickson to Smith. Please do not send me (or any law enforcement officer) any communications between Antonio Smith and his attorney (unless they constitute contraband or admissible evidence of a crime).

Id. at ¶59. The plaintiff construes the parenthetical in the last sentence as ADA Hayes identifying for Stevens a loophole, giving Stevens the impression that if Stevens thought letters to or from the plaintiff's counsel constituted contraband or admissible evidence of a crime, Stevens should forward such letters despite the court's orders. Id.

8

On November 15, 2016, the plaintiff appeared for a hearing before Judge Donald at the Milwaukee County Courthouse. Id. at ¶60. The plaintiff says that for the first time at this hearing, ADA Hayes informed Judge Donald and the plaintiff's attorney that Hayes was getting mail from the prison where the plaintiff was being held, and that one piece of mail he'd received was a letter between the plaintiff and his lawyer. Id. at ¶61. Hayes told the court and counsel that he had not opened or read the privileged letter; Judge Donald thanked Hayes for his integrity and for bringing the issue to the court's attention. Id. at ¶62. The judge instructed Hayes not to open or read the letter, and to delete the mail by which he received it; Hayes agreed that he would do so. Id. The plaintiff asserts that Hayes lied when he said he had not opened or read the letter, arguing that Hayes' October 25, 2016 email response to Stevens (telling Stevens that Stevens had send a privileged letter and that he wasn't supposed to do so) shows that Hayes opened and read the letter. Id. at ¶63.

The plaintiff alleges that two days later, Hayes emailed Warden Eckstein, thinking Eckstein for his call and forwarding "the email thread which we discussed." Id. at Dkt. No. ¶64. The plaintiff asserts that this email defied Judge Donald's order to Hayes to delete the attorney/client letter Hayes had received from prison staff. Id. He asserts that on several occasions after the November 15, 2016 hearing before Judge Donald, Stevens continued to send the plaintiff's mail to Hayes and Dalland; he argues that this violated Judge Donald's orders. Id. at ¶¶65-68.

The plaintiff alleges that a few months later, on February 8, 2017, Hayes sent an email to Dalland, asking Dalland to find out the names of the corrections officers at Dodge and Waupun who had "recovered the letters [the plaintiff] was attempting to mail out (excluding the mail he sent to his lawyers)." Id. at ¶32. The plaintiff says that later that same day, Dalland—at Hayes's direction—sent an email to Timm (at Dodge) and Radtke (the court does not know which one), thanking them for their help, indicating that the DA's office was preparing for the plaintiff's trial, asking for the names of the corrections officers who "actually recovered the outgoing jail letters" that Dalland received from them "(excluding the letters [the plaintiff] sent to his lawyer)" and indicating that the prosecutors would need those officers to testify. Id. at ¶33. The plaintiff says Timm responded that he would do what he could. Id. at ¶34.

The plaintiff recounts that between February 9 and 10, 2017, there were several emails exchanged between Timm and Dalland, with Timm asking to see the letters in the hope of jogging memories, and eventually stating, "I would have to review the letters carefully because I probably would have been the one forwarding them. But not necessarily. So unless you have some documentation that they were forwarded from a particular Supervisor we probably don't have that documentation." Id. at ¶¶35-39.

The plaintiff asserts that on February 27, 2017, Stevens emailed Eckstein and said he asked Hayes whether Hayes continued to need the plaintiff's mail. Id. at ¶69. Hayes apparently responded that the plaintiff's case

wouldn't be closed until the plaintiff was sentenced in April, but that the previous week, the court had modified its order. Hayes said, "Antonio Smith is no longer restricted by the court from having visitors, or from sending mail." Id. Hayes told Stevens that whatever restrictions the institution placed on the plaintiff were up to the institution, but that it was not necessary to send Hayes copies of the plaintiff's mail anymore, "(unless of course it is contraband, and you believe it may be of evidentiary value to me)." Id.

The plaintiff filed this lawsuit on May 11, 2017.

The plaintiff maintains that over a month later, on June 20, 2017, defendant Linssen delivered to the plaintiff a letter addressed to the plaintiff from a law firm; the plaintiff says the letter had been opened prior to it being delivered to him. Id. at ¶74. The plaintiff believes that the letter was opened (by whom, he does not say) in retaliation for all the complaints the plaintiff had made against Stevens and the mailroom staff, as well as for the plaintiff filing this lawsuit. Id. The plaintiff also asserts that on September 12, 2017, Stevens opened and reviewed a letter to the plaintiff from the State Public Defender's Office. Id. at ¶73.

The plaintiff says that on February 2, 2018, he filed an inmate complaint, alleging that Stevens and Green Bay had withheld mail he'd sent to a Brown County Circuit Court judge and an attorney, and that this had caused him to be late in filing a motion in a civil case. Id. at ¶75. The plaintiff says the complaint examiner affirmed the complaint. Id. He states that security supervisor Swiekatowski "claimed that the two legal pieces of mail was located

by him inside of defendant Stevens mailbox." Id. Again, the plaintiff asserts that the mail was withheld from him in retaliation for filing institution complaints and for filing this lawsuit. Id.

In June 2018, the plaintiff wrote an essay about the negative psychological effects of long-term solitary confinement, titled "Satan's Metal Doors to Hell." Id. at ¶76. The essay talked about several of the defendants in this suit. Id. It appears that the plaintiff had someone send the essay for publishing and distribution, and a copy was sent back to the plaintiff. Id. He says, however, that Swiekatowski, Schueler, Eckstein and Kind conspired to deny him a copy of his own essay, that the essay was forwarded to the director of the Division of Adult Institutions and that the essay was "denied." Id. The plaintiff asserts that the defendants violated his right to free speech under the First Amendment and retaliated against him for criticizing the Department of Corrections and for filing this lawsuit. Id.

The plaintiff cites more instances in 2018—he says he received legal correspondence postmarked a month earlier, and complained about it; Swiekatowksi told the complaint examiner that he had looked around for the mail, found it and sent it to the plaintiff, id. at ¶77; and that on November 2, 2018 he got legal mail that had been opened before he got it, id. at ¶78. He says that on December 12, 2018 he received an email from a law firm that had been opened before he received it; he says that an Officer Taylor told him that envelope already was opened when it came from the mail room. Id. at ¶92. Again on December 28, 2018, the plaintiff received a letter from a law firm that

had been opened before he received it; an Officer Whiting told him the letter already had been opened when it came from the mail room. Id. at ¶93. On March 7, 2019, the plaintiff visited the mail room, where he learned from property room officer Vertz that a letter he'd received from a law firm months prior had been opened. Id. at ¶94. Vertz did not know who opened the mail, but he stated that he knew the plaintiff had had trouble with this before, and recommended that the plaintiff file a complaint. Id. The plaintiff believes that all of these instances occurred in retaliation for his filing this lawsuit; he had, as of the date he drafted the third amended complaint, been on mail monitoring for some four years, and he believes that this is the way Stevens, Kind, Eckstein, Schueler, Baumann, Van Lanen, Swiekatowski and Pollard retaliate against him and harass him for suing them. Id. at ¶95.

The plaintiff says that on November 27, 2018, "II Officer" Paul came to him and told him that "they" were trying to get Paul to "lie on" the plaintiff and to write a conduct report against the plaintiff. Id. at ¶79. When the plaintiff asked who "they" were, Paul identified Van Lanen and Kind. Id. Paul said he refused to lie about the plaintiff, and that Francois and a Sgt. Kholer had agreed that the plaintiff had not threatened Paul, telling Paul not to lie for anyone. Id. Paul warned the plaintiff that "they" were about to place him in solitary. Id. The plaintiff says two inmates heard all this. Id. That same day, the plaintiff was placed in solitary pending investigation for making threats to an officer. Id. at ¶80.

On December 5, 2018, a lieutenant he didn't know came to solitary to talk to the plaintiff. Id. at 81. This lieutenant told the plaintiff that Paul *had* written a conduct report about the plaintiff as instructed by her supervisors, but that it hadn't "amount[ed] to threats," so Kind had told Paul to rewrite it. Id. The lieutenant told the plaintiff that the lieutenant had wanted to take the plaintiff's statement and follow up, but that Stevens was leading the investigation. Id. The lieutenant expressed confusion as to why the plaintiff had been placed in solitary and indicated that he would recommend to Kind that the plaintiff be released from solitary immediately. Id.

Several days later, the lieutenant returned and told the plaintiff that he had emailed Kind, saying the lieutenant found no violations by the plaintiff and recommending that the plaintiff be released from solitary. Id. at ¶82. The lieutenant also said that he had talked with Paul, who confirmed the plaintiff never threatened her. Id.

The plaintiff asserts that on December 10, 2018, Van Lanen—supervisor of the restricted housing unit—told the plaintiff that because they could not get him on threats, the plaintiff would be served with a conduct report for soliciting staff. Id. at ¶83. It appears that Stevens did write a conduct report against the plaintiff. Id. at ¶84. But, the plaintiff says, Swiekatowski denied his request to have Paul and a Captain Cushing appear at the administrative hearing; instead, they were allowed to provide written statements. Id. at ¶85. The plaintiff says that Paul wrote that the plaintiff never solicited her or asked for special attention. Id. Nonetheless, security supervisor Wickman found the

plaintiff guilty of soliciting staff. Id. at ¶87. The plaintiff appealed, id. at ¶88, and Warden Pollard reversed, finding that the charge was not substantiated, id. at ¶89. The plaintiff believes that the conduct report, and the finding of guilt, all were in retaliation for his filing this case. Id. at ¶91.

The plaintiff asserts that the defendants have violated his First, Fourth and Fourteenth Amendment rights. Id. at ¶96. He seeks punitive damages and an order directing the Department of Corrections to allow him to receive his "Satan's Metal Doors to Hell" essay. Id. at page 25.

## C.      The Court's Analysis

In its original screening order, the court found that the plaintiff's allegations implicated three potential constitutional provisions: the First Amendment right to send and receive mail; the Sixth Amendment right to counsel; and the Fourteenth Amendment right of access to the courts. These are the causes of action the plaintiff has pleaded in the third amended complaint.

The court begins with the fact that in the third amended complaint, the plaintiff has named the Wisconsin Department of Corrections as a defendant. The Department of Corrections is an agency of the state of Wisconsin. "[A] state and its agencies are not suable 'persons' within the meaning of section 1982 . . . ." Thomas v. Illinois, 697 F.3d 612, 613 (7th Cir. 2012) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989)); see also Nelson v. Gegare, No. 19-cv-510, 2020 WL 1862978, at *4 (E.D. Wis. April 14, 2020); Hamilton v.

<u>Miller</u>, No. 18-cv-47, 2018 WL 4215610, at *2 (E.D. Wis. Aug. 31, 2018). The court will dismiss the Wisconsin Department of Corrections as a defendant.

The court also agrees with the defendants that the plaintiff's claims of retaliation do not belong in this lawsuit. The plaintiff filed this suit on May 11, 2017. It is appropriate for him to include in the third amended complaint events that occurred before that date. But the last twenty or so paragraphs of the third amended complaint allege that certain defendants took various actions—opening his legal mail, writing up false conduct reports against him, having him put in solitary—as retaliation against him for filing this suit. As the district court for the Western District has noted, allowing a plaintiff to include in one complaint the underlying conduct and claims of retaliation based on suing for that underlying conduct can "complicat[e] issues." <u>Upthegrove v. Kuka</u>, No. 5-C-153-C, 2005 WL 2781747, at *2 (W.D. Wis. Oct. 21, 2005). "[A]llowing ongoing claims of retaliation to be added to a lawsuit as the lawsuit progresses could result in a lawsuit's life being extended indefinitely." <u>Fitzgerald v. Greer</u>, No. 07-C-61-C, 2007 WL 5490138, at *1 (W.D. Wis. April 2, 2007). Allowing a plaintiff to add claims of retaliation as they occur "risk[s] delaying resolution of the case indefinitely while the parties litigate and conduct discovery on each discrete instance of retaliation that may occur while the lawsuit progresses." <u>Atkinson v. Mackinnon</u>, No. 14-C-736-bbc, 2015 WL 13658057, at *1 (Oct. 29, 2015).

The court is not saying that the plaintiff cannot sue the defendants he believes have been retaliating against him, only that he must bring his

retaliation claims in a separate lawsuit. The court will dismiss defendants Linssen, Baumann, Van Lanen, Paul, Cushing and Wickman, and will not allow the plaintiff to proceed on retaliation claims against any other defendants.

The third amended complaint names Stacey Tilot, "Sgt." Cygan, the director of the Division of Adult Institutions and Cathy Jess as defendants, but does not allege that any of them took any actions against the plaintiff. Perhaps the plaintiff sued Cygan because of his/her affiliation with the mail room. Perhaps he sued Jess because she was the secretary of the Department of Corrections at the time of the events described in the complaint, or the security chief of the Division of Adult Institutions for the same reason. The court can't tell why the plaintiff would have sued Tilot. But for a government official to be liable under 42 U.S.C. §1983, that official personally must have caused the deprivation of the plaintiff's constitutional rights. Palmer v. Marion Cty., 327 F.3d 588, 594 (7th Cir. 2003) (quoting Kelly v. Mun. Courts of Marion Cty., 97 F.3d 902, 090 (7th Cir. 1996)). The plaintiff must show that the individual "at least acquiesced in some demonstrable way in the alleged constitutional violation." Id. And as to Jess, "§ 1983 does not allow actions against individuals merely for their supervisory role of others." Id. (quoting Zimmerman v. Tribble, 226 F.3d 568, 574 (7th Cir. 2000)). The court will dismiss Tilot, Cygan, the security chief of the Division of Adult Institutions and Jess as defendants.

"Inmates have a First Amendment right both to send and receive mail . . . ." Kaufman v. McCaughtrey, 419 F.3d 678, 685 (7th Cir. 2005). Prison officials may restrict a prisoner's right to mail only where the restriction is "reasonably related to legitimate penological interests" such as "crime deterrence, prisoner rehabilitation, and protecting the safety of prison guards or inmates." Van den Bosh v. Raemisch, 658 F.3d 778, 785 (7th Cir. 2001) (citations omitted). The orders issued by Judges Watts and Donald provided the basis for the Dodge, Waupun and Green Bay defendants to restrict the plaintiff's communications, including his mail. But the plaintiff alleges that the orders made clear that they did *not* apply to his communications with his lawyers. Any restriction that impacted the plaintiff's right to send mail to or receive mail from his lawyers would not be reasonably related to legitimate penological interests (and would violate the judges' orders).

The plaintiff does not allege so much that the defendants at Dodge, Waupun and Green Bay prevented him from sending mail to or receiving mail from his lawyers. Instead, he alleges that the defendants monitored and opened his legal mail and, in several instances, forwarded that mail—without any request from the DA's office—to ADA Hayes. The plaintiff says that on March 27, 2016, while he was at Dodge, Timm, Dylon Radtke and Pollard forwarded his attorney/client mail to Hayes, although they knew the judges' no-contact orders did not require them to do so. The plaintiff says that between April and September 2016, his legal mail was copied and forwarded to Hayes, even though Cynthia Radtke knew that the Milwaukee County orders did not require

18

this and even though he wrote to Radtke, Foster, Cooper and Meli several times, complaining about the issue. Finally, the plaintiff says that at Green Bay, Francois, Stevens, Eckstein, Swiekatowksi and Heil were aware that the no-contact orders did not apply to his legal mail, yet Stevens sent Hayes the five-page letter the plaintiff had written to his lawyer outlining his entire case—the letter that was discussed at the hearing before Judge Donald in November 2016.

While prison officials may examine prisoner mail to make sure it does not contain contraband, Kaufman, 419 F.3d at 685 (citing Wolff v. McDonnell, 418 U.S. 539, 576 (1974) and Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999)), legal mail "is entitled to greater protections because of the potential for interference with [the] right of access to the courts," Kaufman, 419 F.3d at 685. "[W]hen a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." Id.

The plaintiff does not say who opened his mail at any of the three institutions, although he appears to believe that it was Stevens who opened the legal mail at Green Bay. The court will allow the plaintiff to proceed on a First Amendment claim that Stevens opened his legal mail outside of his presence.

The plaintiff claims that Timm, Dylon Radtke and Pollard sent his legal mail to Hayes in March 2016, and that Stevens sent his legal mail to Hayes in the fall of that year. The plaintiff also alleges that Hayes must have read these

communications, despite a court order excepting them. The Seventh Circuit has discussed whether a prison official's reading of an inmate's legal mail violations the Constitution. In <u>Guajardo-Palma v. Martinson</u>, the court explained:

> Suppose a letter arrives at the prison that is known to be from a prisoner's lawyer to the prisoner, and a prison guard reads it and makes a copy for his superiors in order to give them insight into their opponent's litigation strategy. *Gomez v. Vernon*, 255 F.3d 1118, 1123-24, 1133 (9th Cir. 2001). This would give the defendants a litigating advantage sufficient, the cases hold, to violate the prisoner's constitutional right to access to the courts (on which see *Christopher v. Harbury*, 536 U.S. 403, 412-13 . . . (2002)); *Lewis v. Casey*, 518 U.S. 343, 350-51, 354 . . . (1996), and *Bounds v. Smith*, 430 U.S. 817, 828-29 . . . (1977)). "The Fourteenth Amendment guarantees meaningful access to courts, [and] . . . the opportunity to communicate privately with an attorney is an important part of that meaningful access." *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980); see also *id.* at 1143-46; *Merriweather v. Zamora*, 569 F.3d 307, 315-17 (6th Cir. 2009); *Al-Amin v. Smith*, 511 F.3d 1317, 1325-35 (11th Cir. 2008); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Not that the lawyer-client privilege is constitutional. *Maness v. Meyers*, 419 U.S. 449, 466 n.15 . . . (1975); *Lange v. Young*, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989); *Smith v. Moore*, 137 F.3d 808, 819-20 (4th Cir. 1998); *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985). But bestowing it on one side of a litigation and denying it to the other side can place the denied side at a critical disadvantage.
>
> And so with prison officials' reading a prisoner's mail *to* his lawyer. *Jones v. Caruso*, 569 F.3d 258, 267-68 (6th Cir. 1009); *Bell-Bey v. Williams*, 87 F.3d 832, 836-40 (6th Cir. 1996); see also *Thornburgh v. Abbott*, 490 U.S. 401, 411-12 and n.10 . . . (1989). The attorney-client privilege is centrally concerned with confidences communicated by the client to his lawyer in order to enable the lawyer to formulate an effective litigation strategy.
>
> A number of cases characterize the reading of mail to or from a prisoner's lawyer in a pending or impending litigation as infringing the right of free speech rather than or in addition to the right of access to courts. The theory is that reading communications between a lawyer and his client "chills the individual's ability to

engage in protected speech." *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000); see also, e.g., *Jones v. Brown*, 461 F.3d 353, 358-60 (3d Cir. 2006); *Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003); *Brewer v. Wilkinson, supra*, 3 F.3d at 821, 825-26. But since the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts (or, as we're about to point out, on the due process right to a fair hearing). The Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 576 . . . (1974), left open whether "inspection of incoming mail from an attorney placed an obstacle to access to the courts," but a number of cases at our level have taken that approach, as we've seen.

Guajardo-Palma v. Martinson, 622 F.3d 801, 802-803 (7th Cir. 2010).

The court went on to discuss the balance between the prison's need to ensure that the letter *is* legal mail with the prisoner's right to access the courts, but concluded that "the interception of a criminal defendant's confidential communications with his lawyer is subject to harmless-error analysis . . . ." Id. at 805-806.

The plaintiff's allegations against Dodge staff members Timm, Dylon Radtke and Pollard are not detailed; he simply states that they sent Hayes and Dalland his attorney-client communications in May 2016. This is enough, at the screening stage, for the plaintiff to state Fourteenth Amendment access-to-courts claims against Timm, Dylon Radtke and Pollard. The plaintiff also has stated a Fourteenth Amendment access-to-courts claim against Stevens, who allegedly sent Hayes the plaintiff's legal mail from Green Bay. He claims that Heil intercepted the letter but forwarded it to Stevens even though it clearly was from his lawyer. The court will allow the plaintiff to proceed on a Fourteenth Amendment claim against Heil.

The plaintiff also claims that Stevens sent Hayes and Dalland letters the plaintiff wrote to the secretary of the Department of Corrections and the director of the Division of Adult Institutions; he says this violated Wis. Stat. §309.4(3)(a). Section 309.4(3)(a) is a part of the Wisconsin Administrative Code. It prohibits prison staff from opening or reading inmate mail sent to or received from the secretary of the DOC or the director of the division unless the prison security director has reason to believe that the correspondence contains contraband. Wis. Admin. §§ DOC 309.04(3)(e) and (f). The Seventh Circuit has held that violation of a state law—specifically this one—"is not a ground for a federal civil rights suit." Guajardo-Palma, 622 F.3d at 806. The court will not allow the plaintiff to proceed on a claim that Stevens violated Wis. Admin. §DOC 309.04(3).

With regard to Cynthia Radtke, Foster, Cooper and Meli at Waupun and Francois, Eckstein and Swiekatowski at Green Bay, the plaintiff appears to allege that although he told them (perhaps more than once) that his legal mail was excluded from the judges' no-contact order and from monitoring orders, they failed to stop anyone from sending his legal mail to Hayes and Dalland. To show that a prison official is liable for failing to intervene in a constitutional violation, the plaintiff must show that the official "(1) knew that a constitutional violation was committed; and (2) had had a realistic opportunity to prevent it." Gill v. City of Milwaukee, 850 F.3d 335, 342 (7th Cir. 2017) (citing Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994)). The plaintiff has alleged that Cynthia Radtke, Foster, Cooper, Meli, Francois, Eckstein, Kind,

Schueler and Swiekatowski knew that the Milwaukee County judges' orders did not apply to legal mail. He also has alleged that he wrote to Cynthia Radke, Foster, Cooper and Meli, telling them that the orders did not apply to legal mail, but that they did nothing. The plaintiff has not alleged that any of these defendants knew that someone was sending his legal mail to Hayes and Dalland, or that they knew in time to intervene and stop it. The court will not allow the plaintiff to proceed on failure to intervene claims against Cynthia Radke, Foster, Cooper, Meli, Francois, Eckstein, Kind, Schueler or Swiekatowski.

Finally, the plaintiff claims that ADA Hayes and investigator Dalland violated his constitutional rights. The petitioner asserts that Hayes received his privileged correspondence—at least the five-page letter forwarded by Stevens—and that he lied to Judge Donald about not having opened it or read it. "[P]rosecutors enjoy absolute immunity from suit for any conduct taken in the course of initiating or pursuing a criminal prosecution because such conduct is 'intimately associated with the judicial phase of the criminal process.'" Griffin v. Laurie Bondar, Cathy Coulson, Denise Tuttle, No. 20-cv-380-JPS, 2020 WL 3546814, at *2 (E.D. Wis. June 30, 2020) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)). Whether an action falls within the scope of the prosecutor's duties depends on whether, at the time the prosecutor takes an action, he is "acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." Fields .v Wharrie, 672 F.3d 505, 510 (7th Cir. 2012) (citing Imbler, 424 U.S. at 430, 431 n.22).

The facts indicate that Hayes reviewed the plaintiff's correspondence in connection with preparation for the plaintiff's criminal trial. In preparing for that trial, he was acting as an officer of the court, and his actions were related to the judicial phase of the criminal process. He enjoys absolute immunity for the actions he took in that capacity.[2] And the plaintiff has made no allegations against Dalland. The court will dismiss Hayes and Dalland as defendants.

The court will not allow the plaintiff to file any further amendments to the complaint. He has amended the complaint three times since filing his original complaint in May 2017. It is time for the case to move forward. Once the defendants have answered or otherwise responded to the complaint, the court will determine what next steps are necessary. If the plaintiff wishes to proceed on his retaliation claims, he may file those in a separate lawsuit.

## D.    Conclusion

The court **GRANTS** the plaintiff's motion to amend civil rights complaint. Dkt. No. 22.

The court **DISMISSES** defendants Wisconsin Department of Corrections, "Officer Linssen," Ryan Baumann, Jay Van Lanen, Katrina Paul, Daniel P. Cushing, Andrew T. Wickman, Stacey Tilot, "Sgt." Cygan, Cathy A. Jess, the security chief of the Division of Adult Institutions, Cynthia Radtke, Brian

---

[2] The court also notes that the plaintiff *assumes* that Hayes must have opened and read the letter Stevens forwarded him, or he would not have known that it was legal correspondence, which is the basis for his assumption that Hayes lied to Judge Donald. That assumption is not necessarily true. The fact that Hayes told Stevens and Judge Donald that the letter was from a lawyer does not mean that he read the five-page letter.

24

Foster, Sarah Cooper, Anthony Meli, Francois, Scott Eckstein, John Kind, Steve Schueler, William Swiekatowski, Karl P. Hayes and David Dalland.

The court **ORDERS** that under an informal service agreement between the Wisconsin Department of Corrections and this court, the clerk's office shall electronically send copies of the plaintiff's complaint and this order to the Wisconsin Department of Corrections for service on the defendants Christopher Stevens, Chris Heil, William Pollard, Capt. Timm and Dylon Radtke.

The court **ORDERS** defendants Stevens, Heil, Pollard, Timm and Dylon Radtke to file a responsive pleading to the complaint.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[3] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Case 2:17-cv-00667-PP   Filed 07/13/20   Page 25 of 26   Document 24

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 13th day of July, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**