ANTONIO MARQUES SMITH,

                    Plaintiff,

        v.                                    Case No. 17-cv-667-pp

CHRISTOPHER STEVENS,
CHRIS HEIL, DYLON RADTKE,
HERBERT TIMM, and WILLIAM POLLARD,

                    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 35) AND
ALLOWING PLAINTIFF TO AMEND HIS COMPLAINT A FINAL TIME**

Plaintiff Antonio Marques Smith, who is confined at the Wisconsin Secure Program Facility, filed this case under 42 U.S.C. §1983 alleging that the defendants violated his rights under federal law. The court screened the third amended complaint and allowed the plaintiff to proceed on claims under the First and Fourteenth Amendments to the United States Constitution based on allegations that the defendants interfered with his legal mail. Dkt. No. 24 at 19, 21. The defendants have filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt. No. 36.

I.      **Background**

Upon screening the third amended complaint, the court allowed the plaintiff to proceed on claims against some defendants and dismissed claims against others. Dkt. No. 24. As to the claims on which the court allowed him to proceed, the plaintiff alleges that on November 9, 2015, Milwaukee County

Circuit Court Judge J.D. Watts ordered that his telephone, visitation and mail privileges be restricted, in response to a motion from defendant Assistant District Attorney Karl Hayes. Dkt. No. 25 at ¶28. There was an exception to the order—the order did not apply to communications to and from the plaintiff's lawyer. Id.

The plaintiff alleges that in February 2016, he was transferred from the Milwaukee County Jail to Dodge Correctional Institution. Dkt. No. 25 at ¶29. A few weeks later, he allegedly received a memo from defendant Timm—the security supervisor at Dodge—stating that according to the order issued by Judge Watts, all the plaintiff's visiting, phone and mail privileges were being rescinded, except for communications to the plaintiff's attorney. Id. at ¶30. The plaintiff alleges that on or about March 27, 2016 (about two weeks after the plaintiff got the memo from Timm), defendants Timm, Radtke and Pollard sent to ADA Hayes and Investigator David Dalland constitutionally protected attorney/client mail between the plaintiff and his lawyer. Id. at ¶31. (The defendants explain that Hayes was the prosecutor working on the plaintiff's criminal case at the time and Dalland was the investigator working on the case. Dkt. No. 36 at 2.)

The plaintiff alleges that he was transferred to Green Bay Correctional Institution on September 30, 2016. Id. at ¶47. He says that when he arrived, he received a memo from a supervisor informing him that the same restrictions he had been under at Dodge would be in place at Green Bay, and that his mail would be copied and provided to the DA on request "[w]ith the exception of

communication with your attorney . . . ." Id. The plaintiff alleges that this memo was emailed to Green Bay mail room supervisor defendant Stevens. Id. at ¶48.

The plaintiff alleges that on October 25, 2016, Stevens emailed ADA Hayes and Investigator Dalland a five-page letter from the plaintiff to his trial lawyer detailing the plaintiff's view of the case and discussion of his defense. Id. at ¶58. The plaintiff says that Heil intercepted the letter, then forwarded it to Stevens, even though the first page of the letter was clearly addressed to the plaintiff's lawyer. Id. Again, the DA's office did not ask for this correspondence. Id.

ADA Hayes responded the same day, stating

Capt. Stevens: The latest letter you sent me appears to be a letter written by prisoner Antonio Smith to his attorney, Tom Erickson. This is a privileged communication. Further, letters written by Smith to Attorney Erickson are not subject to the Court's various orders regarding Smith's mail restrictions. Nor are letters written by Attorney Erickson to Smith. Please do not send me (or any law enforcement officer) any communications between Antonio Smith and his attorney (unless they constitute contraband or admissible evidence of a crime).

Id. at ¶59.

The plaintiff alleges that on November 15, 2016, he appeared for a hearing before Judge Donald at the Milwaukee County Courthouse. Id. at ¶60. The plaintiff says that for the first time at this hearing, ADA Hayes informed Judge Donald and the plaintiff's attorney that Hayes was getting mail from the prison where the plaintiff was being held, and that one piece of mail he'd received was a letter between the plaintiff and his lawyer. Id. at ¶61. Hayes told

3

the court and counsel that he had not opened or read the privileged letter; Judge Donald thanked Hayes for his integrity and for bringing the issue to the court's attention. Id. at ¶62. The judge instructed Hayes not to open or read the letter, and to delete the email by which he received it; Hayes stated that he would do so immediately upon returning to his office. Id.

The defendants add that in February 2017, the plaintiff pled guilty to first-degree homicide. Dkt. No. 36 at 3 (citing State v. Smith, Case No. 2016CF1004 (Milwaukee County Circuit Court), docket entry from February 22, 2017, available at https://wcca.wicourts.gov.)

A.    Fourteenth Amendment Claims

Based on the plaintiff's allegations that defendants Timm, Radtke and Pollard sent ADA Hayes and Investigator Dalland the plaintiff's attorney-client communications in March 2016, the court allowed the plaintiff to proceed on a Fourteenth Amendment access-to-courts claim against those defendants. Dkt. No. 24 at 21. Based on the plaintiff's allegations that, in October 2016, defendant Stevens sent ADA Hayes the plaintiff's legal mail from Green Bay, the court allowed the plaintiff to proceed on an access-to-courts claim against Stevens. Id. Finally, the court allowed the plaintiff to proceed on an access-to-courts claim against Heil for allegedly intercepting the letter and forwarding it to Stevens, even though it was clearly from the plaintiff's lawyer. Id.

B.    First Amendment Claim Against Stevens

The court allowed the plaintiff to proceed on a First Amendment claim against defendant Stevens for opening the plaintiff's legal mail outside of the

4

plaintiff's presence based on the plaintiff's apparent belief that Stevens opened his legal mail at Green Bay. Id. at 19.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court evaluates such a motion under the same standards that govern a Rule 12(b)(6) motion to dismiss; the court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. See Lodholtz v. York Risk Servs. Grp., 778 F.3d 635, 639 (7th Cir. 2015) (citations omitted).

## III.    Analysis

### A.     The Parties' Arguments

The defendants contend that Heck v. Humphrey, 512 U.S. 486 (1994) bars the plaintiff's access-to-courts claims because the only way that he can show that he was injured by the defendants' actions would be to show that his conviction was invalid. Dkt. No. 36 at 4-7. They also contend that if the court agrees with them and dismisses the access-to-courts claims, the court should construed the plaintiff's allegations against Stevens as an access-to-courts claim only and should dismiss it as Heck-barred, as well. Id.

The plaintiff responds that the prosecutor never alerted the plaintiff's criminal defense attorney to the fact that the plaintiff's letter to his counsel had been intercepted and forwarded to the prosecutor, and he says his defense attorney did not become aware of the intercepted letter until after the plaintiff's

2017 conviction. Dkt. No. 48 at 4. The plaintiff asserts that these facts demonstrate that his First Amendment rights to send and receive mail were violated. Id. at 8. As to the Fourteenth Amendment, the plaintiff asserts that the defendants' actions had a "chilling effect" on his ability, and that of his attorney, to engage in protected speech. Id.

The defendants' reply brief reiterated that the plaintiff could not show actual injury, because he could not show that his conviction was invalid. Dkt. No. 49 at 1. They distinguish one of the cases the plaintiff cited, Olson v. Brown, No. 4:09-CV-6 JD, 2012 WL 3044275 (N.D. Ind. 2012), a district court case from Indiana which involved a prison's practice of reading an incarcerated person's correspondence with his lawyer. Id. at 2. They argue that in contrast, the plaintiff has identified one or two incidents for each defendant over a two-year span. Id. at 2-3. The defendants characterize these events as "mistakes," and ask the court to dismiss the Fourteenth Amendment access-to-courts claims as Heck-barred. Id. at 3.

B.    Discussion

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court explained that civil rights claims brought under 42 U.S.C. §1983 "create[] a species of tort [personal injury] liability." Id. at 483. The Court then held:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution. We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a

6

conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

The defendants argue that the plaintiff's claim that letters he wrote to his criminal defense counsel were opened and read outside his presence and, in two instances, forwarded to the prosecutor and investigator in his criminal case—a claim this court characterized at screening as a Fourteenth Amendment denial-of-access-to-courts claim—is the kind of claim that, if successful, would render the plaintiff's conviction or sentence invalid. To determine whether the defendants are correct, the court must consider what the plaintiff must prove to succeed on an access-to-courts claim.

The Seventh Circuit has explained that "[t]he Fourteenth Amendment guarantees meaningful access to courts, [and] . . . the opportunity to communicate privately with an attorney is an important part of that meaningful access." Guajardo-Palma v. Martinson, 622 F.3d 801, 802 (7th Cir. 2010) (quoting Dreher v. Sielaff, 636 F.2d 1141, 1142 (7th Cir. 1980)). It has held that giving one party—in this case, the prosecution—the protections of the attorney-client privilege (which protects the opportunity to communicate privately with one's lawyer), but denying it to the other party—in this case, the

7

prisoner plaintiff—"can place the denied side at a critical disadvantage." Id. The Seventh Circuit stated that "since the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts . . . ." Id. It explained that in a civil case, allowing a litigant's opponents to "eavesdrop on his communications with [his] lawyer" would undermine the prisoner's right to be represented, at a hearing, by counsel at the prisoner's expense," and that "[a] practice of prison officials reading mail between a prisoner and his lawyer in a criminal case would raise serious issues under the Sixth Amendment (and its application, by interpretation of the Fourteenth Amendment, to state criminal defendants), which guarantees a right to counsel in criminal cases." Id. at 803 (citations omitted).

But to state a claim that the opening of his legal mail violated his right of access to the courts, a plaintiff must show more than the fact that prison staff opened his legal mail. The Guajardo-Palma court emphasized that legal mail is not "sacrosanct;" the prison staff can't always tell just by looking at the envelope whether it is legal mail, so there must be "[a]n accommodation . . . between the prisoner's interest in the confidentiality of communications with his lawyer . . . and the prison's interest in security." Id. at 804. To achieve that balance, the institution may require communications to or from an incarcerated person's attorney to be specially marked, or require the attorney to first identify himself and his client, or require that legal mail be opened in

8

the presence of the incarcerated person. Id. at 804-805 (citing Wolff v.
McDonnell, 418 U.S. 539, 576-77 (1974)). And the plaintiff must show that the
opening of, or interference with, his legal mail "hindered [the prisoner's] efforts
to pursue a legal claim." Id. (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)).

How does an incarcerated person demonstrate that the opening of or
interfering with his legal mail "hindered" his efforts to pursue a legal claim?
One way is by proving a practice on the part of the prison staff of reading or
interfering with his legal mail. Id. at 805 (citing Al-Amin v. Smith, 511 F.3d
1317, 1334 (11th Cir. 2008); Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006);
Davis v. Goord, 320 F.3d 346, 351-52 (2d Cir. 2003). This is because
"knowledge, inferred from a policy or practice, by a prisoner's lawyer that
prison officials are likely to read his communications with his client (because
they refuse to let him be present when they open the lawyer's letter to see
whether it contains contraband or other illicit material) will to a high
probability reduce the candor of those communications." Id.

The plaintiff alleges that on March 27, 2016, while he was at Dodge
Correctional Institution, defendants Timm, Radtke and Pollard sent the
plaintiff's legal mail to ADA Hayes and Investigator Dalland. He also alleges
that on October 25, 2016, while he was at Green Bay Correctional Institution,
defendant Heil intercepted the plaintiff's letter to his lawyer and forwarded it to
defendant Stevens, who then emailed the letter to Hayes and Dalland.[1] The

[1] In their reply brief, the defendants reference a third incident in which the
plaintiff alleged that on September 12, 2017, Stevens opened and inspected a
letter sent to him from the State Public Defenders' Office. Dkt. No. 49 at 3

9

court cannot conclude that two incidents, occurring months apart at different institutions, constituted a "practice" of the staff of either institution reading or interfering with the plaintiff's legal mail.

Another way a plaintiff may show that the opening of or interfering with his mail "hindered" his efforts to pursue a legal claim is if he can show that the communication of his defense strategy to the prosecutors was "inherently detrimental to [the plaintiff in his criminal case], unfairly advantaged the prosecution, and threatened to subvert the adversary system of criminal justice." Weatherford v. Bursey, 429 U.S. 545, 556 (1977). If, on the other hand, the interference with the plaintiff's mail had no impact on the outcome of the plaintiff's criminal case, the interference "is subject to harmless-error analysis." Guajardo-Palma, 622 F.3d at 805-06 (citing Weatherford, 429 U.S. at 554-59).

The plaintiff's third amended complaint alleged that Timm, Radtke and Pollard sent his mail to Hayes and Dalland on March 27, 2016, dkt. no. 25 at ¶31, and that Heil intercepted, and Stevens sent, the plaintiff's letter detailing his defense strategy to Hayes and Dalland on October 25, 2016, dkt. no. 25 at ¶¶58-59. The plaintiff alleged that on October 25, 2016—the same day Hayes

---

(citing Dkt. No. 25—the third amended complaint—at ¶73). In its July 13, 2020 screening order, the court ruled that the last twenty or so paragraphs of the third amended complaint alleged that certain defendants had opened the plaintiff's legal mail, written false conduct reports against him and had him put in segregation as retaliation against him for filing this lawsuit (which he did on May 11, 2017). Dkt. No. 24 at 16. The court ruled that the plaintiff could not bring his retaliation claims in this lawsuit, dismissed six defendants and forbade him from pursuing retaliation claims against other defendants, including Stevens, in this lawsuit. Id. at 16-17.

received the intercepted letter from Stevens—Hayes emailed Stevens and Dalland, instructing Stevens not to send Hayes or any law enforcement officer any communications between the plaintiff and the plaintiff's lawyer unless they constituted contraband or admissible evidence of a crime. Id. at ¶59. The plaintiff alleged that a hearing before Judge Donald on November 15, 2016[2]—over two weeks later—Hayes told the plaintiff's criminal defense attorney and Judge Donald that Hayes had received the letter the plaintiff had written his lawyer. Id. at ¶61. The plaintiff says that Hayes assured defense counsel and Judge Donald that he had not opened or read the email that contained the letter; the plaintiff asserts that this was a lie because the email Hayes sent to Stevens and Dalland showed that Hayes had read the letter. Id. at ¶¶62-63.

The plaintiff's criminal jury trial began three months later, on February 13, 2017. State v. Smith, 2016CF001004 (Milwaukee County), available at https://wcca.wicourts.gov. The trial lasted for eight days—the docket indicates that on the eight day (February 22, 2017), the parties reached an agreement and the plaintiff pled guilty, with the court finding that he did so freely, voluntarily and intelligently. Id.

In a response brief filed after the defendants filed their reply in support of their motion for judgment on the pleadings (a response brief not allowed by this court's rules), the plaintiff asserted that the forwarding to Hayes and Dalland of the letter he wrote to his defense attorney had a direct impact on the outcome

---

[2] The public record for the criminal case indicates that this hearing took place on November 14, 2016. State v. Smith, 2016CF001004 (Milwaukee County), available at https://wcca.wicourts.gov.

11

of his criminal case. Dkt. No. 50. He asserted that he "did not simply want to plead guilty in the second week of his jury trial, it was information the prosecution took from the letter Smith wrote to his attorney, that directly led to the guilty pleads." Id. at 3.

This is where the defendants' argument that the plaintiff's Fourteenth Amendment claims are Heck-barred comes in. Albeit very late in the litigation, the plaintiff has asserted that but for the interception and sending to Hayes and Dalland the letter extensively detailing his theory of the case and his ideas on defense strategy, the outcome of the plaintiff's criminal case would have been different. He has implied that he would not have pled guilty were it not for the information the prosecution obtained from his letter. Even if this fact is true—and the plaintiff has presented no evidence that it is—it would mean that the plaintiff is seeking damages for an allegedly unconstitutional conviction. If he prevailed on his claim that he would not have pled guilty if not for the alleged Fourteenth Amendment access-to-courts violation, it would necessarily imply the invalidity of his conviction. Heck bars the plaintiff from bringing such a claim unless he can show that conviction has been reversed, expunged or called into question on collateral attack.

The plaintiff has not demonstrated that his conviction has been reversed, expunged or called into question on collateral attack. The state docket shows that the plaintiff was sentenced on July 18, 2017 to life in prison with an additional five-year penalty enhancer, consecutive to sentences he was serving in two other state cases. State v. Smith, 2016CF001004 (Milwaukee County),

12

available at https://wcca.wicourts.gov. The plaintiff's motions for post-conviction relief are still pending. Id. The court will grant the defendants' motion for judgment on the pleadings as to the plaintiff's access-to-courts claims and dismiss those claims without prejudice.

That leaves the court's ruling allowing the plaintiff to pursue a First Amendment claim against Stevens. The third amended complaint alleged that Stevens was a security supervisor at Green Bay Correction and was the mail room supervisor. Dkt. No. 25 at ¶5. The plaintiff asserted that on September 29, 2016, the security director at Waupun Correctional Institution (where the plaintiff was then in custody) send a group email to various staff (though not Stevens) at Green Bay, letting the Green Bay staff know that the plaintiff was going to be transferred to Green Bay in a few days and letting them known that the plaintiff was under a no-contact order but that it did not apply to communications with the plaintiff's lawyer. Id. at ¶46. The plaintiff was transferred to Green Bay the next day, whereupon he received a memorandum from Green Bay staff informing him that Green Bay would continue to follow the no-contact order except as to communications with his lawyer. Id. at ¶47. The plaintiff asserted that the same day—September 30, 2016—the memorandum was sent by email to various Green Bay staff, including Stevens. Id. at ¶48. The plaintiff identified other communications advising Stevens that the no-contact order did not include communications with the plaintiff's lawyer. Id. at ¶¶50, 55. The plaintiff alleged, however, that on October 7, 2016—only a week after he arrived at Green Bay—Stevens emailed "some of"

13

the plaintiff's mail to prosecutor Hayes, even though the DA's office had not asked for it and even though the September 30, 2016 memo specified that the plaintiff's mail would be forwarded "[u]pon request by the DA's office." Id. at ¶56. The plaintiff alleged that on October 26, 2016, Stevens—again, without being asked to do so by the DA's office—emailed Hayes and Dalland, attaching the detailed letter from the plaintiff to his criminal defense attorney outlining his defense strategy. Id. at ¶58.

The plaintiff alleged that through September 12, 2017 (four months after the plaintiff filed the original complaint), Stevens continued to send the plaintiff's mail to Hayes and Dalland without being asked to do so (though he does not say that the mail was legal mail) and says that Stevens forwarded to Hayes and Dalland letters the plaintiff had written to the Secretary of the Department of Corrections, the Administrator of the Division of Adult Institutions and a letter he received from the State Public Defender. Id. at ¶¶65-73.

In its July 13, 2020 screening order, the court stated:

> The plaintiff does not say who opened his mail at any of the three institutions, although he appears to believe that it was Stevens who opened the legal mail at Green Bay. The court will allow the plaintiff to proceed on a First Amendment claim that Stevens opened his legal mail outside of his presence.

Dkt. No. 24 at 19. The defendants contend that "the kind of interference with legal mail alleged by [the plaintiff] is better analyzed as an access to courts claim." Dkt. No. 36 at 7. They cite the Seventh Circuit's discussion in

Guajardo-Palma of how best to characterize claims regarding the reading of mail to or from an incarcerated person's lawyer. That language states:

> A number of cases characterize the reading of mail to or from a prisoner's lawyer in a pending or impending litigation as infringing the right of free speech rather than or in addition to the right of access to the courts. The theory is that reading communications between a lawyer and his client "chills the individual's ability to engage in protected speech." *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000); see also, e.g., *Jones v. Brown*, 461 F.3d 353, 358-60 (3d Cir. 2006); *Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003); *Brewer v. Wilkinson*, . . . 3 F.3d [816] at 821 [5th Cir. 1993]. But since the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts (or, as we're about to point out, on the due process right to a fair hearing).

Guajardo-Palma, 622 F.3d at 802. They assert that because the plaintiff was "concerned with attorney-client confidentiality to try to win his case, not because he wanted to enrich the marketplace of ideas," the court should have analyzed this claim, like the plaintiff's other claims, as a denial-of-access-to-courts claim and should now dismiss it for the same reasons it is dismissing the other claims.

In 1996, the Seventh Circuit decided Antonelli v. Sheahan, 81 F.3d 1422 (7th Cir. 1996). The plaintiff claimed that his right of access to the courts had been violated by the alleged opening, delaying and stealing of his mail. Id. The Seventh Circuit rejected this argument because the plaintiff had not alleged any "detriment to his access to the courts." Id. The court concluded, however, that these same assertions constituted allegations "of violations of free speech and association," and that they were sufficient to state claims. Id. at 1432.

15

Three years later, in <u>Rowe v. Shake</u>, 196 F.3d 778 (7th Cir. 1999), the court stated the following when affirming the dismissal of a complaint alleging that the incarcerated person's First Amendment rights were violated by interference with the receipt of his mail:

> The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail. *See Thornburgh v. Abbott*, 490 U.S. 401 . . . (1989); *Turner v. Safley*, 482 U.S. 78 . . . (1987). Prison regulations or practices that affect a prisoner's legal mail are of particular concern because of the potential for interference with a prisoner's right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343 . . . (1996). Prison regulations or practices affecting a prisoner's receipt of non-legal mail also implicate First Amendment rights and must be "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 409 . . . (quoting *Turner*, 482 U.S. at 89 . . .). On the other hand, prison security "is a sufficiently important governmental interest to justify limitations on a prisoner's first amendment rights." *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986). Accordingly, we have upheld regulations authorizing prison officials to inspect incoming or outgoing non-legal mail for contraband against First Amendment challenges. *See id.*

<u>Id.</u> at 782.

The following year, the court considered an incarcerated person's allegation that the institution was violating his First Amendment rights "by delivering his mail in an untimely manner." <u>Zimmerman v. Tribble</u>, 226 F.3d 568, 572 (7th Cir. 2000). The court stated, "The free-speech clause of the First Amendment applies to communications between an inmate and an outsider, *Martin v. Brewer*, 830 F.2d 76, 77 (7th Cir. 1987), and if [the plaintiff] alleges a continuing pattern or repeated occurrences of such conduct he has a valid claim for a First Amendment violation." <u>Id.</u> (citing <u>Sizemore v. Williford</u>, 829 F.2d 608, 609 (7th Cir. 1987)).

16

In Lewis v. Cook Cty. Bd. of Comm'rs, 6 F. App'x 428, 430 (7th Cir. 2001), the plaintiff alleged that nine pieces of his legal mail were opened outside his presence. The Seventh Circuit found that he had not stated an access-to-courts claim because he had not demonstrated a legal case or claim that was thwarted by the alleged opening of the mail. Id. The court also rejected the plaintiff's attempt to state a First Amendment claim:

> Even accepting [the plaintiff's] assertion that nine pieces of his legal mail were opened outside his presence, he fails to allege that this was the result of a "content-based prison regulation or practice." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Furthermore, he does not allege that the mail room staff delayed or lost any of his legal mail and thus, their actions did not violate the First Amendment. *See id.*; *cf. Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (finding legal mail that was "delayed for an inordinate amount of time" and sometimes stolen was sufficient to state a First Amendment claim).

Id.

In Greeno v. Litscher, 13 F. App'x 370, 375 (7th Cir. 2001), the plaintiff alleged that "unnamed mail office personnel at Jackson Correctional Institution opened legal mail from attorneys outside of his presence on at least 16 occasions between August 1998 and January 2000, despite the fact that he filed numerous grievances complaining of the conduct." The Seventh Circuit stated:

> The defendants' alleged conduct would constitute a violation of [the plaintiff's] First Amendment rights. Although prison officials may open a prisoner' legal mail in his presence, *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974), repeated instances of a prisoner's legal mail being opened outside of his presence are actionable. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (allegations that legal mail was repeatedly opened and sometimes stolen stated claims); *Castillo v. Cook County Mail Room Dept.*, 990 F.2d 304, 306-

17

07 (7th Cir. 1993) (allegations that prisoner's legal mail was opened outside of his presence stated a claim). [The plaintiff's] allegations that his legal mail was repeatedly opened for approximately one and one-half years—despite his frequent complaints—are sufficient at this stage to state a First Amendment claim.

Id. at 375-76.

In 2005, the court addressed an incarcerated person's claim that over six months, Department of Corrections officials opened eight pieces of mail—including some he was sending to law offices—outside of his presence.

Kaufman v. McCaughtrey, 419 F.3d 678, 685 (7th Cir. 2005). The court stated:

> Inmates have a First Amendment right to both send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576 . . . (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. See *Wolff*, 418 U.S. at 577 . . . ; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir. 1993).

Id. at 685-86. The Kaufman court concluded that the plaintiff had not demonstrated that the mail that was opened was "legal" mail. Id. at 686.

In Harrison v. Cty. of Cook, Ill., 364 F. App'x 250 (7th Cir. 2010), the plaintiff asserted that county officials opened his legal mail outside his presence fifteen times over approximately two years, violating his right to access the courts. The court evaluated the allegations both in the context of an access-to-courts claim and in the context of a claim of violation of the plaintiff's rights to free speech and association:

To ensure adequate access to the courts, an inmate has the right to have "legal" mail—mail designated as correspondence with an attorney, *see Kaufman v. McCaughtrey*, 419 F.3d 678, 685-86 (7th Cir. 2005)—opened in his presence. Most of [the plaintiff's] letters are correspondence with a court and therefore do not qualify. The opening of the remaining correspondence with attorneys is also insufficient to state a claim because he does not allege any detriment to any legal claim. *See Lewis*, 518 U.S. at 351 . . . ; *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Nor can the opening of these 15 pieces of mail outside of [the plaintiff's] presence support claims for violations of his rights of free speech and free association. Although an allegation that prison officials regularly open privileged mail from an attorney may state such a claim, *see Antonelli*, 81 F.3d at 1431-32, only one item of mail . . . was actually marked as mail from an attorney. Its opening, by itself, does not show a continuing practice of opening privileged mail and therefore cannot support a free-speech or free-association claim. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987). Nothing on the mail from [other law firms] stated that they were from [the plaintiff's] attorney or that they were privileged, and therefore opening them outside of [the plaintiff's] presence did not violate his rights. *See Kaufman*, 419 F.3d at 685-86. And no free-speech or free-association claims arose from the opening of the other 12 pieces of mail because they did not bear an attorney's name and a warning that they were legal mail. *See id.* [The plaintiff's] First Amendment rights did not preclude the defendants from examining them. *Id.* at 685.

Id. at 252-53.

Against this backdrop, the court issued its 2012 decision in Guajardo-Palma, in which court opined that while some courts (itself included) had analyzed "the reading of mail to or from a prisoner's lawyer in a pending or impeding litigation as infringing the right of free speech rather than or in addition to the right of access to the courts," "it seems more straightforward to base the concern with destroying (lawyer-client confidentiality) on the right of

access to the courts (or, as we're about to point out, on the due process right to a fair hearing)." Guajardo-Palma, 622 F.3d at 802.

This survey indicates that claims that institution officials delayed incarcerated persons' mail, lost their mail, stole their mail or somehow interfered with their ability to send or receive mail—any kind of mail—arise under the First Amendment (Antonelli, Rowe, Zimmerman, Lewis, Kaufman). Claims that institutions repeatedly opened legal mail also may arise under the First Amendment (Greeno, Harrison). Claims that the institution's opening of an incarcerated person's mail was content-based arise under the First Amendment (Lewis). Claims that the institution read an incarcerated person's legal mail in pending or impending litigation constitute access-to-courts claims, but require the plaintiff to prove that the opening of the mail hindered or interfered with his efforts to pursue a valid legal claim (though a practice of reading the plaintiff's legal mail can be enough to show such hindrance or interference) (Guajardo-Palma). And of course, a plaintiff may allege that the institution's acts of opening, reading, delaying or losing his legal mail violated his right of access to the courts, if he can demonstrate hindrance or interference.

The question is whether any of the plaintiff's allegations against Stevens can be characterized as anything other than a complaint that Stevens read (and forwarded) his legal mail in pending litigation. If not, the defendants are correct that that his claim against Stevens is better characterized as an access-to-courts claim and meets the same fate as his other claims. The court

20

concludes that there is not sufficient information in the third amended complaint for the court to make this determination.

The plaintiff alleged that a week after he arrived at Green Bay, Stevens "emailed some of [the plaintiff's] mail to defendant Hayes." Dkt. No. 25 at ¶56. It sounds as if the plaintiff is indicating that Stevens (or someone) made an electronic copy of mail the plaintiff had received and sent it via email to Hayes. The plaintiff does not specify whether this was legal mail; he does not describe the nature of the mail at all. He does not explain whether this was outgoing mail from the plaintiff to someone else, or incoming mail to the plaintiff from someone else. He does not say whether, after Stevens sent the copy of the plaintiff's mail to Hayes, the intended recipient of the mail received it. He does not say whether Stevens' actions delayed the mail being received or sent.

The plaintiff's allegation that on October 25, 2016, Stevens sent Hayes and Dalland—via email—a letter the plaintiff had written his attorney is an access-to-courts claim and is <u>Heck</u>-barred. The third amended complaint does not allege that Stevens prevented the letter from being delivered to the lawyer. In his brief in opposition to the motion for judgment on the pleadings, the plaintiff asserts—for the first time—that his defense attorney did not learn "that a letter was actually mailed to [the defense attorney until] approximately two months after the incident." Dkt. No. 48 at 4. He asserted that "[t]he confiscated/intercepted letter [the plaintiff] wrote to his attorney was never mailed out to his defense counsel . . . ." <u>Id.</u> Later in the opposition brief, the plaintiff states that "[t]his letter was not mailed out of the institution to the

intended recipient, defense attorney Thomas J. Erickson . . . ." Id. at 6. He asserts that his criminal defense attorney "ha[s] no record of ever receiving the letter Stevens intercepted," and asserts that Stevens's failure to mail the letter violated the plaintiff's First Amendment rights. Id. at 7. But the plaintiff did not make these allegations in his third amended complaint.

The third amended complaint alleges that Stevens "continued to violate" the court order by sending Hayes and Dalland the plaintiff's mail without it being requested by the DA's office. Dkt. No. 25 at ¶65. He alleges that on October 7 and October 17, 2016, Stevens send Hayes and Dalland "confidential" letters the plaintiff had written to the Secretary of the Department of Corrections and the Administrator of the Division of Adult Institutions. Id. at ¶70, 72. He states that Stevens sent more of his mail on October 31, 2016 and November 15, 2016. Id. at ¶¶66, 67.

Again, the plaintiff does not explain whether Stevens's sending of the letters to the DOC Secretary and the DIA Administrator delayed his mail or prevented it from being delivered to its intended recipients. He does not describe the mail he says Stevens forwarded on October 31 and November 15, or explain whether that mail was delivered to its intended recipient.

The missing facts, as well as the facts the plaintiff has stated in his opposition brief that were not included in the third amended complaint, are important in determining whether the plaintiff has stated a First Amendment claim. If the plaintiff is alleging that Stevens repeatedly took the plaintiff's mail, such that it was not delivered to its intended recipient or that it was delayed,

that could be a First Amendment claim (whether the mail was legal mail or some other kind of mail). If, however, the plaintiff is alleging that Stevens copied legal mail related to his pending criminal case and sent the copies to Hayes, then allowed the original to travel on to its intended recipient, that is the type of access-to-courts claims that the court has determined is Heck-barred.

The court will give the plaintiff a final opportunity to amend his complaint. The court has dismissed as Heck-barred his Fourteenth Amendment claims as to all the defendants. The court will allow the plaintiff to file a fourth amended complaint for one purpose—to allow him to fill in the missing facts about the mail he alleges Stevens copied and forwarded between October 7, 2016 and November 15, 2016, to determine whether those missing facts support a claim that Stevens' actions violated the First Amendment. The plaintiff must use the court's amended complaint form; the court is sending a blank copy with this order. The plaintiff must file the amended complaint in time for the court to receive it by the deadline the court sets below. If the court does not receive the amended complaint by that deadline, the court will dismiss the case for stating claims that are Heck-barred and for failing to diligently prosecute the case.

## IV. Conclusion

The court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for judgment on the pleadings. Dkt. No. 35. The court **GRANTS** the motion as to the plaintiff's access-to-courts claims against all defendants and

**DISMISSES without prejudice** the plaintiff's access-to-courts claims. The court **DENIES** the motion as to the plaintiff's First Amendment claim against defendant Stevens at this time.

The court **ORDERS** that if the plaintiff wishes to proceed on a First Amendment claim against Stevens, he must file an amended complaint that complies with this order in time for the court to *receive* it by the end of the day on **October 15, 2021**.

If the court does not receive an amended complaint by the end of the day on **October 15, 2021**, the court will dismiss the case on the next business day for the reasons stated in this order.

The court **DISMISSES** defendants Chris Heil, Dylon Radtke, Herbert Timm and William Pollard.

Dated in Milwaukee, Wisconsin this 17th day of September, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**