UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANTONIO MARQUES SMITH,

                Plaintiff,

v.                                               Case No. 17-cv-667-pp

CHRISTOPHER STEVENS,

                Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 63) AND DISMISSING CASE**

---

Plaintiff Antonio Marques Smith, who is incarcerated at Waupun Correctional Institution and representing himself, filed this civil rights case under 42 U.S.C. §1983. Dkt. No. 1. The court screened the fourth amended complaint and allowed the plaintiff to proceed on a claim under the First Amendment to the United States Constitution based on allegations that defendant Christopher Stevens intercepted and did not deliver the plaintiff's October 24, 2016 outgoing legal mail and his October 17, 2016 incoming mail.[1] Dkt. No. 54 at 5. Specifically, the plaintiff alleged that Stevens intercepted

---

[1] Previously, the court screened the third amended complaint and allowed the plaintiff to proceed on claims under the First and Fourteenth Amendments based on allegations that the defendants had interfered with his legal mail. Dkt. No. 24 at 19, 21. The defendants filed a motion for judgment on the pleadings, dkt. no. 35, and the court granted the motion as to the plaintiff's access-to-courts claims against all defendants, dkt. no. 51 at 13, 23-24. The court denied the motion as to the plaintiff's First Amendment claim against Stevens and gave the plaintiff the opportunity to amend his complaint a final time (his fourth amended complaint) to restate his allegations against Stevens. Id. at 22-24.

three pieces of mail: (1) a letter the plaintiff sent to his attorney in his ongoing criminal case; (2) a letter to the plaintiff from a Kim Stelow; and (3) a letter to the plaintiff from a Babette Green. Id. On September 27, 2022, the court granted the defendant's motion for partial summary judgment on exhaustion grounds and dismissed the plaintiff's claims as to his allegations that the defendant intercepted the October 17, 2016 mail from Kim Stelow and Babette Green. Dkt. No. 62 at 3-4. On November 14, 2022, the defendant filed a motion for summary judgment as to the plaintiff's remaining claim regarding the alleged interception of the plaintiff's outgoing letter to his criminal defense lawyer. Dkt. No. 63.

On November 15, 2022, the court ordered that by December 14, 2022, the plaintiff must file a response to the defendant's motion. It warned that if the plaintiff did not file his response by that deadline the court would treat the motion as unopposed, without further input from the plaintiff, and that the court would likely grant the defendant's motion. Dkt. No. 68. Since then, the plaintiff has filed multiple motions and other documents, but he has not filed a response to the defendant's motion for summary judgment. On December 5, 2022, the plaintiff filed a combined motion for preliminary injunction, appointment of counsel and to stay proceedings. Dkt. No. 69. The plaintiff filed a motion asking the court to provide him with a copy of all filings on the docket and to order the defendant to produce a complete copy of discovery. Dkt. No. 71. He filed a motion to withdraw his motion for preliminary injunction. Dtk. No. 74. The court granted the plaintiff's motion to withdraw his motion for

2

Case 2:17-cv-00667-PP    Filed 11/09/23    Page 2 of 11    Document 90

preliminary injunction; denied without prejudice his motion to appoint counsel; denied as moot his motion to stay proceedings; granted in part his motion for copy of all filings and ordered the defendant to provide the plaintiff with a copy of documents filed in this case; granted the plaintiff's motion for the defendant to produce a complete copy of discovery and ordered the defendant to provide the plaintiff with a complete copy of the discovery exchanged in this case; and ordered the plaintiff to respond to the defendant's motion for summary judgment by July 28, 2023. Dkt. No. 78 at 8-9.

On July 25, 2023, the plaintiff filed a motion to stay summary judgment deadlines (Dkt. No. 82) and a combined motion for reconsideration of the court's order screening his third amended complaint, motion to join this case with Smith v. Eckstein, Case No. 21-cv-109-pp (E.D. Wis.) and motion to file an amended complaint in the joined case (Dkt. No. 83). On September 14, 2023, the court denied these motions and ordered the plaintiff to file his response to the defendant's motion for summary judgment by October 13, 2023. Dkt. No. 85.

On October 12, 2023, the plaintiff filed a motion for extension of time to file his response. Dkt. No. 86. The court granted that motion and ordered that if the court did not receive the plaintiff's response to the defendant's summary judgment motion by October 31, 2023, it would decide the summary judgment motion without his input. Dkt. No. 87.

On November 2, 2023, the plaintiff filed a second motion for extension of time to respond. Dkt. No. 88. The court granted the motion and ordered that if

3

the court did not receive the plaintiff's response to the defendant's summary judgment motion by the end of the day on November 7, 2023, it would consider the defendant's motion without input from the plaintiff. Dkt. No. 89. The November 7, 2023 deadline has passed, and the court has not received the plaintiff's response to the defendant's motion for summary judgment. The court will resolve the defendant's motion without the plaintiff's input.

I. **Defendant's Motion for Summary Judgment**

　　A.　Facts

At the time of the events described in the fourth amended complaint, Stevens was a captain at Green Bay Correctional Institution. Dkt. No. 65 at ¶2.

When the plaintiff arrived at Green Bay, he was subject to strict communication restrictions ordered by the judge presiding over his criminal case, in which he was being prosecuted for first degree intentional homicide while armed. Id. at ¶6. The judge imposed the restrictions after finding that there was substantial, credible evidence that the plaintiff had knowingly and maliciously attempted prevention or dissuasion of a witness in his state criminal case. Id. The judge initially ordered that the plaintiff was to have no contact with that witness or his family by any means. Id. The court further ordered that reasonable restrictions on the plaintiff's ability to communicate were necessary to prevent further intimidation of witnesses and other crimes. Id. Therefore, all the plaintiff's custody telephone, video-chat, visitation and mail privileges were "completely rescinded, with the exception of communication to and from his attorney, Dan Sanders." Id. On September 12,

2016, the court modified the order and allowed the plaintiff to receive mail but ordered the prison to "copy all mail receive[d] and provide copies of the mail to the Milwaukee County District Attorney's office upon request." Id. at ¶8.

When the plaintiff arrived at Green Bay on September 30, 2016, Captain Stevens was made the point of contact for the plaintiff's incoming and outgoing mail. Id. at ¶9. This meant that any mail that the plaintiff received or wanted to send was given to Stevens. Id.

The day the plaintiff arrived at Green Bay, Stevens received an email from Waupun Correctional Institution's security director, Anthony Meli, with a copy of two court orders and additional information about the plaintiff. Id. at ¶10. Meli's email stated that the plaintiff had facilitated the murder of a witness for his upcoming homicide trial:

> [I]nmate Smith is under a court order to have his mail, phones and visits limited. Inmate Smith has facilitated the death of one of the witnesses for his upcoming Homicide trial scheduled in November 2016 and he has repeatedly tried to make contact with others on the streets.

Id. The email also explained the plaintiff's efforts to circumvent the no contact order at Waupun:

> WCI managed him by placing him in TLU pending a review for Administrative Confinement. While housed in our RHU building he has received 3 major conduct reports (2 for attempting to have others near him send out mail for him and 1 for being disruptive in the RHU law library room while reviewing digitally formatted legal material).

Id. With respect to mail, Meli's email stated that "any incoming and outgoing mail" was being copied and scanned to provide to the court upon request:

5

> The court has recently modified the court order regarding mail (see attached memo) inmate Smith can receive mail but any incoming or outgoing mail is being copied/scanned and will be provided to the court upon their request.

Id.

The same day Stevens received the email from Meli, he reached out to Cynthia Radtke at Waupun to ask if there was a specific person or email address to whom or which to send the scanned letters for the plaintiff. Id. at ¶11. Radtke responded, "The court order states that the prison shall copy all mail received and provide copies of the mail to the Milwaukee County District Attorney's Office upon request." Id. She said that she had not received any mail after the order went into effect, but her plan was to "scan all of the mail and turn it over if it was requested by Milwaukee." Id. She gave Stevens the contact information for Investigator Dave Dalland and Assistant District Attorney Karl Hayes. Id.

Based on these emails from Meli and Radtke, Stevens believed that he was supposed to copy and scan all the plaintiff's incoming and outgoing mail to send to ADA Hayes and Investigator Dalland. Id. at ¶12. Rather than wait for them to request it, Stevens decided it would be easiest to send it out right away. Id. Stevens did not realize that attorney mail was not included in the order. Id.

Stevens started to receive the plaintiff's mail right away. Id. at ¶13. Stevens tried to process the mail the same day he received it. Id. He would open and scan the mail, then send it to Hayes and Dalland at the Milwaukee County District Attorney's Office. Id. Although he would open and scan the

6

letters, Stevens did not look closely at the envelopes, nor did he read or review the letters for content. Id. If the mail was outgoing, he would place the mail in with the rest of the institution's outgoing mail. Id. at ¶14. If the mail was incoming, he would route it to the plaintiff's unit for delivery to him. Id.

On October 25, 2016, Stevens received an outgoing letter from the plaintiff addressed to Attorney Thomas Erickson. Id. at ¶15. As he had done with previous mail of the plaintiff's, Stevens scanned and sent a copy of this letter via email to Hayes and Dalland. Id. Later that evening, ADA Hayes emailed Stevens to let him know that the letter that Stevens had scanned and sent to ADA Hayes was privileged communication with the plaintiff's attorney and it should not have been sent to the DA's office. Id. at ¶16. Hayes clarified that the court order did not apply to communications with the plaintiff's attorney and pertained only to non-privileged mail sent or received by the plaintiff. Id. Stevens apologized and thanked Hayes for bringing this to Stevens's attention. Id.

Although Stevens had opened and scanned this letter and emailed it to Hayes and Dalland, he did not read the letter for its contents. Id. at ¶17. Due to the passage of time, Stevens does not specifically remember the moment that he put the letter to Attorney Erickson in the outgoing mail; based on his regular practice and the available records, he believes that he did. Id. at ¶18.

On the Mail Read Log, Stevens marked that the letter to Attorney Erickson would still be delivered. Id. at ¶19. He would not have marked that box if he did not intend to put the letter in the outgoing mail. Id. Also, any

7

monitored mail that is not sent out to the intended recipient or forwarded to the incarcerated individual is documented with at least an incident report with the reason why it was not sent. Id. at ¶20. There is no record or documentation that the October 25, 2016 letter to Attorney Erickson was not sent out to the post office for mailing. Id. As such, Stevens has no reason to believe the letter was not mailed as intended. Id.

B.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A
dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

8

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C.  Discussion

"[P]risoners have protected First Amendment interests in both sending and receiving mail." Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999). This right, however, "does not preclude prison officials from examining mail to ensure that it does not contain contraband." Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005). "Prison regulations or practices affecting a prisoner's receipt of non-legal mail . . . implicate First Amendment rights and must be 'reasonably related to legitimate penological interests[.]'" Rowe, 196 F.3d at 782 (quoting Thornburgh v. Abbott, 490 U.S. 401, 409 (1989)). Regarding legal mail, prison officials may—consistent with the First Amendment—open such mail in the presence of the incarcerated person. Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974).

Because the plaintiff's claim involves the non-delivery of a single piece of mail, it does not implicate the plaintiff's constitutional rights under the First Amendment. See Schroeder v. Drankiewicz, 519 F. App'x 924, 947 (7th Cir. 2013) (citing Zimmerman v. Tribble, 226 F.3d 568, 572-73 (7th Cir. 2000) (concluding that an alleged delay in delivering mail on one occasion failed to

9

state First Amendment claim); Rowe, 196 F.3d 778, 782 (7th Cir. 1999) (concluding that allegations of "relatively short-term and sporadic" delays in delivering mail failed to state First Amendment claim); Ahlers v. Rabinowitz, 684 F.3d 53, 64-65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not state First Amendment claim); Deleon v. Doe, 361 F.3d 93, 94 (2d Cir. 2004) (concluding that prison staff's loss of letter containing birthday card did not state a First Amendment claim).

The undisputed facts show that Stevens did not violate the plaintiff's rights under the First Amendment; he opened, scanned and sent to the District Attorney's Office a single piece of legal mail, under the misapprehension that he was required to do so by a court order. The assistant district attorney corrected Stevens's misapprehension. This was an error—a single error—not a violation of the plaintiff's constitutional rights. The court will grant the defendant's motion for summary judgment.

## II. Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 63.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of Judgment. See Federal Rules of Appellate Procedure 3, 4. This court may

extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 9th day of November, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**