UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO MARQUES SMITH,

            Plaintiff,

v.                                                 Case No. 17-cv-667-pp

CHRISTOPHER STEVENS,

            Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 63) AND DISMISSING CASE**

Plaintiff Antonio Marques Smith, who is incarcerated at Waupun Correctional Institution and is representing himself, filed this civil rights case under 42 U.S.C. §1983. Dkt. No. 1. The court screened the fourth amended complaint and allowed the plaintiff to proceed on a claim under the First Amendment to the United States Constitution based on allegations that defendant Christopher Stevens intercepted and did not deliver the plaintiff's October 24, 2016 outgoing legal mail and his October 17, 2016 incoming mail.[1] Dkt. No. 54 at 5. The plaintiff alleged that Stevens intercepted three pieces of

---

[1] Previously, the court screened the third amended complaint and allowed the plaintiff to proceed on claims under the First and Fourteenth Amendments based on allegations that the defendants had interfered with his legal mail. Dkt. No. 24 at 19, 21. The defendants filed a motion for judgment on the pleadings, dkt. no. 35, and the court granted the motion as to the plaintiff's access-to-courts claims against all defendants, dkt. no. 51 at 13, 23-24. The court denied the motion as to the plaintiff's First Amendment claim against Stevens and gave the plaintiff the opportunity to amend his complaint a final time (his fourth amended complaint) as to his allegations against Stevens. Id. at 22-24.

1

mail: (1) a letter the plaintiff sent to his attorney in his ongoing criminal case; (2) a letter to the plaintiff from a Kim Stelow; and (3) a letter to the plaintiff from a Babette Green. Id. On September 27, 2022, the court granted the defendant's motion for partial summary judgment on exhaustion grounds and dismissed the plaintiff's claims as to his allegations that the defendant had intercepted the October 17, 2016 mail from Kim Stelow and Babette Green. Dkt. No. 62 at 3-4.

On November 14, 2022, the defendant filed a motion for summary judgment as to the plaintiff's remaining claim of the alleged interception of the plaintiff's outgoing letter to his criminal defense lawyer. Dkt. No. 63. Since then, the plaintiff has filed multiple motions and other documents. Dkt. Nos. 69 (combined motion for preliminary injunction and to stay proceedings); 71 (motion for court to provide plaintiff a copy of all filings on docket and to order defendant to produce a copy of discovery); 74 (motion to withdraw motion for preliminary injunction); 82 (motion to stay summary judgment deadlines); 83 (motion for reconsideration of court's order screening third amended complaint, to join this case with Smith v. Eckstein, Case No. 21-cv-109-pp (E.D. Wis.), and to file amended complaint); 86 (motion for extension of time); and 88 (motion for extension of time). The court addressed the plaintiff's motions, dkt. nos. 78, 85, 87, and set a final deadline of November 7, 2023 for the plaintiff to respond to the defendant's motion for summary judgment, dkt. no. 89.

When the court did not receive the plaintiff's response by the November 7, 2023 deadline, it granted the defendant's motion for summary judgment and

dismissed the case. Dkt. No. 90. Eleven days later, the court received from the plaintiff a motion for reconsideration in which he explained that on November 5, 2023, he had submitted his response to prison authorities for mailing. Dkt. No. 95. The plaintiff also filed a notice of appeal. Dkt. No. 92. The court issued an indicative ruling under Federal Rule of Civil Procedure 62.1 stating that if the Court of Appeals for the Seventh Circuit remanded the case, it would grant the plaintiff's motion for reconsideration, reopen the case and resolve the defendant's motion for summary judgment (after considering the plaintiff's response). Dkt. No. 106. The court of appeals remanded the case. Dkt. No. 109. The defendant's motion for summary judgment is fully briefed and this decision resolves the motion.

**I.    Defendant's Motion for Summary Judgment**

A.    <u>Facts</u>[2]

At all times relevant to this case, Stevens was a captain at Green Bay Correctional Institution. Dkt. No. 65 at ¶2.

The plaintiff transferred from Waupun Correctional Institution to Green Bay on September 30, 2016. <u>Id.</u> at ¶4. At that time, the plaintiff was subject to court orders that affected his mail privileges. The initial court order, issued on November 9, 2015 by Milwaukee County Circuit Court Judge J.D. Watts, explained that there was substantial, credible evidence that the plaintiff had knowingly and maliciously attempted prevention or dissuasion of a witness in

---

[2] The court includes only material, properly supported facts in this section. <u>See</u> Fed. R. Civ. P. 56(c).

the prosecution for first degree intentional homicide while armed. Id. at ¶6. Judge Watts ordered that the plaintiff could have no contact with that witness or his family by any means. Id. Judge Watts further ordered that reasonable restrictions of the plaintiff's ability to communicate were necessary to prevent further intimidation of witnesses and other crimes. Id. As a result of the order, all the plaintiff's custody telephone, video-chat, visitation and mail privileges were "completely rescinded, with the exception of communication to and from his attorney, Dan Sanders." Id.

On September 12, 2016, Milwaukee County Circuit Court Judge Joseph Donald modified the initial order and allowed the plaintiff to receive mail but ordered the prison to "copy all mail receive[d] and provide copies of the mail to the Milwaukee County District Attorney's office upon request." Id. at ¶8.

When the plaintiff arrived at Green Bay on September 30, 2016, Stevens was made the point of contact for the plaintiff's incoming and outgoing mail. Id. at ¶9. This meant that any mail the plaintiff received or wanted to send was given to Stevens. Id.

The day the plaintiff arrived at Green Bay, Stevens received an email from Waupun Correctional Institution's security director, Anthony Meli, with a copy of the two court orders and additional information about the plaintiff. Id. at ¶10. Meli's email described that the plaintiff had facilitated the murder of a witness for his upcoming homicide trial:

> [The plaintiff] is under a court order to have his mail, phones and visits limited. [The plaintiff] has facilitated the death of one of the witnesses for his upcoming Homicide trial scheduled in November

4

> 2016 and he has repeatedly tried to make contact with others on the streets.

Id. The email also explained the plaintiff's efforts to circumvent the no-contact order at Waupun:

> WCI managed him by placing him in TLU pending a review for Administrative Confinement. While housed in our RHU building he has received 3 major conduct reports (2 for attempting to have others near him send out mail for him and 1 for being disruptive in the RHU law library room while reviewing digitally formatted legal material).

Id. With respect to mail, Meli's email stated that "any incoming and outgoing mail" was being copied and scanned to provide to the court upon request:

> The court has recently modified the court order regarding mail (see attached memo) [the plaintiff] can receive mail but any incoming or outgoing mail is being copied/scanned and will be provided to the court upon their request.

Id.

The same day Stevens received the email from Meli, he reached out to Cynthia Radtke at Waupun to ask if there was a specific person or email address to whom or which to send the scanned letters for the plaintiff. Id. at ¶11. Radtke responded, "The court order states that the prison shall copy all mail received and provide copies of the mail to the Milwaukee County District Attorney's Office upon request." Id. She said that she had not received any mail after the order went into effect, but that her plan was to "scan all of the mail and turn it over if it was requested by Milwaukee." Id. She gave Stevens the contact information of Investigator Dave Dalland and Assistant District Attorney Karl Hayes. Id.

5

According to defendant Stevens, based on these emails from Meli and Radtke, Stevens believed that he was supposed to copy and scan all the plaintiff's incoming and outgoing mail to send to Hayes and Dalland. Id. at ¶12. Rather than wait for them to request it, Stevens decided it would be easiest to send it out right away. Id. Stevens did not realize that attorney mail was not included in the order. Id.

According to the plaintiff, Stevens "would have had to be incompetent not to have reviewed all the attachments to Security Director Meli['s] email, along with Radtke email with attachments." Dkt. No. 96 at ¶12. The plaintiff states that Stevens "made a conscious decision to disobey the court orders, and do what he felt was best, and not what the court felt was best and instructed the prison to do with [the plaintiff's] communication." Id. He states that Stevens "readily admits to disobeying the court orders, Stevens read the court orders, memorandums and emails all informing him that the modified court order only pertained to incoming mail, and excluded [the plaintiff's] attorney." Id.

Stevens started to receive the plaintiff's mail right away and he tried to process the mail the same day he received it. Dkt. No. 65 at ¶13. He would open and scan the mail, then send it to ADA Karl Hayes and Investigator David Dalland at the Milwaukee County District Attorney's Office. Id.

It is undisputed that on October 25, 2016, Stevens received an outgoing letter from the plaintiff addressed to Attorney Thomas Erickson. Id. at ¶15. As he had done with the plaintiff's previous mail, Stevens scanned and sent a copy of this letter via email to ADA Hayes and Investigator Dalland. Id. Later that

6

evening, ADA Hayes emailed Stevens to let him know that the letter that he had scanned and sent to him was privileged communication with the plaintiff's attorney and that it should not have been sent to the ADA's office. Id. at ¶16. ADA Hayes clarified that the court order did not apply to communications with the plaintiff's attorney and pertained only to non-privileged mail sent or received by the plaintiff. Id. Stevens apologized and thanked Hayes for bringing this to his attention. Id.

The parties dispute whether the defendant read the October 25, 2016 letter the plaintiff wrote to his attorney. According to the defendant, although he had opened and scanned the letter and emailed it to ADA Hayes and Investigator Dalland, he did not read the letter for its contents. Id. at ¶17. According to the plaintiff, the defendant told the plaintiff in June 2017 that he read the letter before scanning and emailing it to ADA Hayes. Dkt. No. 96 at ¶17. The defendant says that although he would open and scan the letters, he did not look closely at the envelopes, nor did he read or review the letters for content. Dkt. No. 65 at ¶13. According to the plaintiff, the defendant's records document that he read the mail and that the envelope was addressed to the plaintiff's attorney. Dkt. No. 96 at ¶13.

The parties also dispute whether the defendant mailed the letter. According to the defendant, if the mail was outgoing, he would place the mail in with the rest of the institution's outgoing mail. Dkt. No. 65 at ¶14. If the mail was incoming, he would route it to the plaintiff's unit for delivery to him. Id. Due to the passage of time, the defendant does not specifically remember

7

the moment that he put the letter to Attorney Erickson in the outgoing mail, but based on his regular practice and the available records, he believes that he did. Id. at ¶18. On the "Mail Read Log," the defendant marked that the letter to Attorney Erickson would still be delivered. Id. at ¶19. He would not have marked that box if he did not intend to put the letter in the outgoing mail. Id. According to the plaintiff, the defendant did not mail his letter out of the institution. Dkt. No. 96 at ¶14. The plaintiff states that his attorney never received the letter. Id. at ¶19.

The plaintiff had visitation with Attorney Erickson on March 28, 2016, June 29, 2016, February 19, 2017 and April 25, 2017. Dkt. No. 65 at ¶21.

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C. Discussion

The defendant contends that the court should grant his motion for summary judgment because a single interference with mail does not state a First Amendment claim, negligence is not actionable under 42 U.S.C. §1983 and he is entitled to qualified immunity. Dkt. No. 64 at 7-10. The plaintiff contends that the defendant violated his First Amendment right to free speech because he "made a conscious decision to violate the court orders related to [the plaintiff's] communications," opened the plaintiff's legal mail to his criminal trial attorney outside of the plaintiff's presence, read the letter, scanned and emailed the letter to the prosecution and did not mail the letter to the plaintiff's attorney. Dkt. No. 97 at 8-9.

"[P]risoners have protected First Amendment interests in both sending and receiving mail." Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999). This right, however, "does not preclude prison officials from examining mail to ensure that it does not contain contraband." Kaufman v. McCaughtry, 419

9

F.3d 678, 685 (7th Cir. 2005). "Prison regulations or practices affecting a prisoner's receipt of non-legal mail . . . implicate First Amendment rights and must be 'reasonably related to legitimate penological interests[.]'" Rowe, 196 F.3d at 782 (quoting Thornburgh v. Abbott, 490 U.S. 401, 409 (1989)). Regarding legal mail, prison officials may, consistent with the First Amendment, open such mail in the presence of the incarcerated person. Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974).

The parties dispute whether the defendant intentionally violated the state court orders, whether the defendant read the letter to the plaintiff's attorney and whether the defendant mailed the letter to the plaintiff's attorney (by placing it with the institution's outgoing mail). These disputes are immaterial because the plaintiff's claim involves the non-delivery of a single piece of mail, which does not implicate the plaintiff's constitutional rights under the First Amendment. See Schroeder v. Drankiewicz, 519 F. App'x 924, 947 (7th Cir. 2013) (citing Zimmerman v. Tribble, 226 F.3d 568, 572-73 (7th Cir. 2000) (concluding that an alleged delay in delivering mail on one occasion failed to state First Amendment claim); Rowe, 196 F.3d at 782 (concluding that allegations of "relatively short-term and sporadic" delays in delivering mail failed to state First Amendment claim); Ahlers v. Rabinowitz, 684 F.3d 53, 64-65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not state First Amendment claim); Deleon v. Doe, 361 F.3d 93, 94 (2d Cir. 2004) (concluding that prison staff's loss of letter containing birthday card did not state a First Amendment claim).

10

The plaintiff's contention that the defendant violated his rights under the First Amendment because the defendant read the plaintiff's legal mail is misplaced. The fact that someone else may have read the plaintiff's mail does not violate the Constitution. It may violate state law or prison rules, but it does not rise to the level of a constitutional violation. While legal mail receives greater protection under the Constitution than non-legal mail, that protection arises from the plaintiff's right of access to the courts, not any right to have his communications be private. See Guajardo-Palma v. Martinson, 622 F.3d 801, 802 (7th Cir. 2010). Previously, the court dismissed the plaintiff's access-to-the-courts claim under Heck v. Humphrey, 512 U.S. 486 (1994). Dkt. No. 51 at 12. The plaintiff had argued that the defendant's actions had a direct impact on the outcome of his criminal case; this court reasoned that Heck barred the claim because the plaintiff had not demonstrated that his conviction had been reversed, expunged or called into question on collateral attack. Id. at 11-12.

The undisputed facts show that the defendant did not violate the plaintiff's rights under the First Amendment. The court will grant the defendant's motion for summary judgment.[3]

## II. Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 63.

---

[3] Because the court has granted the defendant's motion on the merits, it will not address the defendant's contention that he is entitled to qualified immunity.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year

after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 15th day of August, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**